.58 So.2d 626

**CITY OF BIRMINGHAM et al. v. HENDRIX et al.**

**6 Div. 217.**

Supreme Court of Alabama.

Jan. 24, 1952.

Rehearing Denied May 15, 1952.

Frank Bainbridge and Mayer U. Newfield, Birmingham, for appellants.

Graham, Bibb, Wingo & Foster, Birmingham, for appellees.

GOODWYN, Justice.

The question for decision in this case is whether two employees of the City of Birmingham are entitled to credit for annual vacation and sick leave which they contend accumulated in their favor during their absence on extended active duty as members of the United States Naval Reserve.

At the time of their entry on active duty, both were working in the City Police Department, where they had been so employed continuously for a long time; both were members of the United States Naval Reserve, and both were subject to the Civil Service Laws applicable to employees of the City of Birmingham. One of them, S. L. Nabers, joined the Naval Reserve on April 7, 1941, and went on active duty on May 1, 1941. He served until October 15, 1945, and on November 9, 1945, returned to his position of employment with the City of Birmingham; similarly with respect to the other employee, R. J. Hendrix, except as to dates. He joined the Reserve on November 11, 1942, went on active duty on November 17, 1942, served until October 11, 1945, and returned to his job with the city on November 1, 1945.

Both were granted leaves of absence from their employment for the period of their service with the Navy. Also, they were paid in full for all accumulated leave to which they were entitled at the time of their entry on active duty, including an additional 21 day military leave of absence with pay.

With respect to leave received during their service in the Navy, it was stipulated "that while the aforesaid Nabers served in the United States Naval Reserve he received twenty-seven days' leave of absence with pay, that he received no sick leave, and that he received $750.00 for terminal leave pay; and that while the aforesaid Hendrix served in the United States Naval Reserve he received twenty-nine days' leave of absence with pay, that he received no sick leave, and that for terminal leave pay he received a $400.00 terminal leave bond, plus $11.00 in cash; * * * that the leave pay referred to, and the terminal leave pay referred to, * * * consisted of leave pay and terminal leave pay from the United States Government, or from the United States Naval Reserve, and did not consist of any benefit from the City of Birmingham."

On August 9, 1948, they filed a demand in writing with the Personnel Board of Jefferson County that they be allowed the accumulated vacation and sick leave claimed in this proceeding. It was stipulated that prior to said filing they presented, through counsel, an oral claim to the City of Birmingham and were advised that their claim should be presented to the Personnel Board. On December 1, 1948, the Personnel Board denied the claim. Thereupon, petitioners (appellees) commenced this declaratory judgment proceeding seeking establishment of their claimed right to accumulated vacation and sick leave credit. The Personnel Board of Jefferson County, the Personnel Director of Jefferson County, the individual members of the Personnel Board and the City of Birmingham were made respondents. It was further stipulated that petitioners made oral demand on each of the respondents for allowance of their claims prior to the institution of this suit.

Hendrix claimed an accumulation of 35 days vacation leave and 35 days sick leave while on duty with the Navy. Nabers claimed 53 days vacation leave and 53 days sick leave. This represented a claimed accumulation of leave at the rate of one work day per month for each purpose.

By agreement, this case was heard and decided by a three judge court. The court rendered a decree establishing petitioners' right to accumulated leave credit for the period of their absence in the Navy, but provided "that the total amount of accumulated vacation credit to and not taken or used" by either petitioner "at any one time, including vacation accumulated before, during or subsequent to his service in the United States Naval Reserve, shall not exceed twenty-six (26) days, the maximum amount of vacation accumulable by an employee of the City of Birmingham under the applicable Civil Service Law and Rules", and further provided "that the total amount of accumulated sick leave credited to and not taken or used by" either petitioner "at any one time, including sick leave accumulated before, during, or subsequent to his service in United States Naval Reserve, shall not be in excess of sixty (60) days, the maximum amount of sick leave accumulable by an employee of the City of Birmingham under the applicable Civil Service Law and Rules."

From this decree, the appellants have prosecuted this appeal, assigning ten grounds of error. All of these assignments are, in substance, the same—that the court erred in holding that either petitioner accumulated any vacation or sick leave with the City of Birmingham while serving with the United States Naval Reserve.

The appellees have filed cross-assignments of error taking the point that the decree is in error in limiting their right to accumulated vacation leave to a maximum of 26 days and their right to accumulated sick leave to a maximum of 60 days.

Among the stipulations between the parties is the following: "It is expressly stipulated that all the parties hereto desire a judgment only as to whether the petitioners are entitled to the accumulation of the vacation and sick leave while serving in the armed forces, and the amount of any such vacation and sick leave, if any, so accumulated by the petitioners while the petitioners were serving in the armed forces."

This brings us, then, to a consideration of the applicable statutes and rules of the Personnel Board.

*Leave of absence statutes.*

Code of 1940, Title 12, § 151, is as follows:

"All permanent employees holding regular full time positions under the jurisdiction of this chapter shall be allowed a vacation with pay at the rate of one work day per month of service. Such vacation allowance shall be cumulative to not to exceed twenty-six work days. The time for such vacation shall be determined by the appointing authority except that the employee, if a vacation has not been allowed him during the calendar year, may demand that he be given a vacation not exceeding twelve work days. Employees who resign in good standing or who are separated from the service without fault or delinquency on their part shall be allowed credit for vacation earned. Any employee who is dismissed for cause shall forfeit all vacation allowances. The rules and regulations shall contain provisions for granting permanent employees sick leave with pay and for leave without pay."

The foregoing section is a part of Chapter 12, Title 12, which, until passage of Act No. 248, Regular Session 1945, approved July 6, 1945, Gen.Acts 1945, p. 376, Code 1940, Tit. 62, § 330(21) et seq., contained the law providing for the Civil Service System applicable to Birmingham. Section 19 of Act No. 248 and the above § 151 are identical. Accordingly, for the purposes of this opinion we will refer only to § 151.

Code of 1940, Title 35, § 12, provides as follows:

"All officers and employees of the State of Alabama, or of any county, municipality, or other agency or political subdivision thereof, who shall be active members of the Alabama national guard or naval militia, or of the officer's reserve corps of the United States Army, or of the United States naval reserves, shall be entitled to military or naval leave of absence from their respective civil duties and occupations on all days that they shall be engaged in field or coast defense or other training or on other service ordered under the provisions of this chapter, or of the national defense act, or of the federal laws governing the United States naval reserves, without loss of pay, time, efficiency rating, annual vacation, or sick leave, but no such person granted such leave of absence with pay shall be paid for more than twenty-one working days at any one time."

*Rules of Personnel Board*

There are several rules of the Personnel Board which should be considered, but we see no need to set them out in full here. The reporter will see that they are included in the report of this case. These rules are as follows:

*Leave of absence rules:*

> 9.8, adopted March 1, 1940. (This is the same as 11.8 in the revision of the rules on March 1, 1948. Rule 11.8 was amended on December 15, 1948, but not so as to affect this decision).

> 9.8 (b), adopted on February 5, 1941. (Amended on March 12, 1942, by extending the leave benefits to employees subject to call and to volunteers).

> 9.8 (c), adopted on January 26, 1944.

> 9.8 (d), adopted on July 24, 1946.

*Vacation rules:*

> 9.5, effective March 1, 1940.

> 9.5 (b), effective September 25, 1946. (11.5, effective March 1, 1948, took the place of Rule 9.5).

*Sick leave rules:*

> 9.6, effective March 1, 1940. (This rule was amended on June 2, 1944, and revised as of March 1, 1948, as Rule 11.6).

The decisive question in this case is stated in the petition to be:

"Did an employee of the City of Birmingham who was called to and entered upon extended active duty in the United States Naval Reserve during World War II, and who upon his honorable discharge from the United States Naval

Reserve returned to his position with said city, accumulate vacation (and sick leave) with the City of Birmingham while serving in said United States Naval Reserve upon leave of absence granted by the said city and the Personnel Board of Jefferson County, pursuant to Section 12, Title 35, Code of Alabama of 1940?"

We think the question should be answered in the negative, and we will now proceed to give our reasons for this conclusion.

Rule 9.5 provides for vacations as follows: "Each employee occupying a permanent position for which pay is fixed on a monthly basis shall * * * be allowed a vacation with pay at the rate of one work day per month of service * * *."

Rule 9.6 authorizes sick leave as follows: "Each employee occupying a permanent position, the pay for which is fixed on a monthly basis, shall * * * be entitled to sick leave with pay at the rate of twelve working days per year of service."

■ It seems too clear for argument that these rules require that an employee must be actually occupying a position, and actually doing work for which he is being paid, before he is to have any right to vacation or sick leave. Moreover, and as emphasis for this clear intent, it is expressly provided in Rule 9.8(b) that the period of military leave " *shall not be so counted for the purpose of accumulation of vacation or sick leave*." It is to be noted that this was the rule and practice—the authoritative determination and interpretation—for some time before either of petitioners joined the Naval Reserve. Clearly, then, the rules alone cannot serve as a basis for petitioners' claims; and we do not understand petitioners to so insist. They do insist, however, that Code of 1940, Title 35, § 12, supra, when considered in connection with the foregoing rules and Title 12, § 151, supra, protects them in their claimed right to accumulated leave. Let us see.

■ We cannot construe § 151, Title 12, standing alone, as authorizing an employee to accumulate the "vacation with pay" therein provided for while he is absent on extended leave. By its very terms an employee can earn a vacation with pay only while holding a *"regular full time position*[s] * * * at the rate of one work day per month *of service.*" An employee cannot be *"absent on extended leave"* and at the same time be holding a *"regular full time position*[s] * * * *of service.*" The two conditions are incongruous. Clearly, there is nothing in this section which indicates a legislative intent that "vacation with pay" can accumulate in favor of an employee while he is "absent on extended leave" and not performing *any service* whatsoever for the city.

This brings us, then, to a consideration of § 12, Title 35, supra. Petitioners seem to recognize that whatever rights they might have to accumulated leave are dependent upon this section.

Our view is that Section 12 cannot be of any help to petitioners for two reasons:

■ First, if we should assume that § 12 applied to petitioners while absent on extended military leave, still we could not agree that they accumulated any leave credit during such absence. It is true that § 12 provides for military leaves of absence, under certain conditions, to government employees, but this privilege is not without its limitations. It is provided that such absence shall be "without *loss* * * of annual vacation, or sick leave". But this does not mean that an employee thereby is granted an annual vacation or sick leave. It simply means that an employee who is covered by this section shall not be denied any right to such leave which he might have otherwise. There can be no "loss" of vacation or sick leave unless an employee has a legal right to such leave. We have concluded above that the applicable statute and rules of the Personnel Board cannot be construed so as to give petitioners the accumulated leave which they claim. Accordingly, not having any vacation or sick leave to lose, they cannot complain that they are denied any right given by § 12. We observe that § 12 does not prohibit any of the enumerated governmental agencies from adopting rules or regulations granting to their employees benefits in addition to those protected by said section, provided, of course, the gov-

ernmental agency is authorized otherwise so to do. In other words, § 12 is not to be construed as a limitation on the authority to grant additional benefits, but rather as guaranteeing certain minimum rights which cannot be taken away.

Secondly, and to us the more compelling reason for denying relief to petitioners, is our conclusion that § 12 was not intended to apply in cases of absence on extended active duty.

This is the first time that this statute has been before this court for interpretation. There are recognized rules of construction which should be helpful in considering it.

 As observed in the case of City of Birmingham v. Southern Express Co., 164 Ala. 529(3), 537, 51 So. 159, 162:

"A thing may be within the letter of a statute and not within the meaning or spirit, or it may be within the clear meaning or spirit and not within the letter. Courts, in construing statutes, often look less to the letter than to the context, the spirit, or to the meaning of the statutes to arrive at the true intent of the lawmaker. Statutes are often drawn inartificially. Apt words are not always used, and perspicuity and precision are not always observed, by those who draft statutes. The whole statute under construction, as well as others, must sometimes be looked to, to ascertain the true meaning and intent. * * *."

As was stated in the case of American Standard Life Ins. Co. v. State, 226 Ala. 383(1), 384, 147 So. 168, in the construction of a particular statute, or in the interpretation of its provisions,

"* * * * '* * * The endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the legislature, or to discover how the policy of the legislature with reference to the subject matter has been changed or modified from time to time.' * * *."

In Birmingham Paper Co. v. Curry, 238 Ala. 138(5), 140, 190 So. 86, 88, this court said the following:

"The Court in determining the Legislature's intention in construing statutes, in the establishment of uniformity in the law, and to give rational construction to doubtful meanings of words and phrases employed, may look to other provisions of the same act, consider its relation to other statutory and constitutional provisions, *view its history* and the *purposes sought to be accomplished* and look to the previous state of law and to the defects intended to be remedied. * * *."

 One of the basic rules of statutory interpretation was stated in In re Upshaw, 247 Ala. 221(1), 223, 23 So.2d 861, 863, to be as follows:

"* * * 'it is a well-settled rule of interpretation, applicable to constitutions as well as statutes, that it is permissible in ascertaining their purpose and intent to look to the history of the times, the existing order of things, the state of the law when the instrument was adopted, and the conditions necessitating such adoption.' * * *."

The following is from 50 Am.Jur., Statutes, Sec. 354:

"A comparison of the prior law with the present is considered helpful in determining the true intent of the legislature. It has even been held that an earlier statute on the same subject which has expired or been repealed may be · considered in construing an act of doubtful meaning. Under these rules, where the language used in the amended statute is of such doubtful import as to call for construction, it is proper to consider the terms of the statute before its amendment, and a supplemental, or an amendatory, and the original statute, are to be read together in discovering the legislative intent. In connection with the matter under consideration, it is frequently declared proper to take into consideration the history of legislation on the subject matter of the statute being construed."

Let us examine § 12, Title 35, Code 1940, in the light of the foregoing principles.

Going back as far as the Code of 1896, Chapter 76, §§ 2852–2896, we find statutory provisions governing the "Alabama National Guard"; also, in the 1907 Code, Chapter 29, §§ 929–998, and in General Acts 1915, Act No. 695, approved Sept. 23, 1915, pp. 745–766. But we find no provision for leaves of absence until passage of Act No. 361, approved Sept. 19, 1919, Gen. Acts 1919, pp. 467–481.

Section 19 of the 1919 Act was as follows:

"Section 19. Leaves of Absence for State Employees: All' officers and employees of the State of Alabama who shall be members of the National Guard of Alabama shall be entitled to leave of absence from their respective duties, without loss of pay, time or efficiency rating, on all days during which they shall be engaged in field or coast defense or other training ordered under the provisions of this Act, provided that leaves of absence granted under the provisions of this section shall not exceed fifteen (15) days at any one time."

Certainly, there can be no difference of opinion as to the purpose and limitations of Section 19. In unmistakable language it was limited in application specifically to "members of the National Guard * * * on all days during which they shall be engaged in * * * *training*". This clearly contemplated those short periods of duty when the National Guard was engaged *in training,* usually in summer encampments, in contrast to extended and indefinite periods of active duty with the armed forces. It seems to us that, in addition to the use of the limiting word "training", the use of the words "on all days" is strongly indicative of this; likewise, the provision that leave shall not exceed fifteen days "at any one time". This last phrase certainly connotes intermittent, short periods of service.

Section 80 of the National Defense Act of June 3, 1916, 39 Stat. p. 203, 32 U.S.C. § 75, 32 U.S.C.A. § 75, and the foregoing section 19 are, to all intents and purposes, identical. A reading of Section 80 will readily disclose that Section 19 was taken from it. Section 80, 39 Stat. p. 203, is as follows:

"Sec. 80. Leaves Of Absence For Certain Government Employees.—All officers and employees of the United States and of the District of Columbia who shall be members of the National Guard shall be entitled to leave of absence from their respective duties, without loss of pay, time, or efficiency rating, on all days during which they shall be engaged in field or coast-defense training ordered or authorized under the provisions of this Act."

The marginal notes to Section 80 describe the section as applying to "Government employees. Leaves of absence to, while training."

Also, the heading of Section 75, Title 32 U.S.C. 1926 ed., which is the same in the 1934, 1940 and 1946 editions, 32 U.S.C.A. § 75, supplies further evidence of the clear intent to limit application of the leave statute to periods of training. The heading is as follows: "§ 75.—Government employees in National Guard; leaves of absence for training periods."

The Federal laws relating to the other reserve components of the armed forces appear likewise to be limited in application to periods of training. In this connection, see, as to Reserve Officers and Enlisted Reserve Corps, 10 U.S.C.A. § 371, 40 Stat. 72, Act approved May 12, 1917, amended July 1, 1947, c. 192, § 1(a), 61 Stat. 238; and as to the Naval Reserve, see 34 U.S.C.A. § 853g, Sec. 9 of the Naval Reserve Act of 1938, 52 Stat. 1177, amended July 1, 1947, c. 192, Section 3, 61 Stat. 239.

A more complete picture of the Federal laws may be obtained by reading Public Law 153, approved July 1, 1947, c. 192, 61 Stat. 238, which was an Act "to amend existing laws relating to military leave of certain employees of the United States or of the District of Columbia so as to equalize rights to leave of absence and reemployment for such employees who are members of the Enlisted or Officers' Reserve Corps, the National Guard or the Naval

Reserve". This amendatory act brought up to date and equalized the rights of Federal employees to leaves of absence. In all of these laws, the right to leave was, and still is, limited to training periods. The report of the House Committee on Armed Services in connection with Public Law 153 (House Report No. 483, May 28, 1947, U.S. Code Congressional Service, 80th Congress, First Session, 1947, pp. 1265–1268) shows this very clearly.

So, as noted above, the Alabama statute, as originally enacted, applied only to absence while engaged in training. Let us see whether this original purpose and intent has been changed, and, if so, to what extent.

Section 19 of the 1919 Act, supra, was included in the 1923 Alabama Code as § 1579 of Chapter 40, which related to the State Militia. An identical section was included in Act No. 494, approved September 9, 1927, regulating the military and naval forces of the State. Gen.Acts Ala.1927, pp. 566–597, § 23.

In 1931 a new act was passed regulating the State's military and naval forces. General Acts Ala. 1931, pp. 687–749. Section 12 of this Act was as follows:

"Section 12. Leaves of Absence for State Employees: All officers and employees of the State of Alabama, who shall be members of the National Guard *or Naval Militia* of Alabama, shall be entitled to leave of absence from their respective *civil* duties without loss of pay, time, or efficiency rating on all days during which they shall be engaged in field or coast defense, or other training *or service* ordered under the provisions of this Act. Provided; that leaves of absence *with pay,* granted under the provisions of this Section, shall not exceed *eighteen days* at any one time."—[Italics supplied.]

The portion italicized denotes additions or amendments. The number of days "at any one time" was formerly fifteen.

Prior to the 1931 Act leave benefits were given only to "members of the National Guard" (defined as the "volunteer land forces of this State", § 4, Gen.Acts 1919,

pp. 467, 468, § 1557, Code 1923, § 5, Gen. Acts 1927, pp. 566, 568), "on all days during which they shall be engaged in field or coast defense, or other training", although provision was made for the establishment in Alabama of a Naval Militia and a Marine Corps (§ 14, Gen.Acts 1919, pp. 467, 473, § 1574, Code 1923, § 8, Gen.Acts 1927, pp. 566, 570).

It is apparent, therefore, that the first change wrought by the 1931 Act was to extend the leave benefits to members of the "naval Militia".

The next change, the addition of the word "civil", clearly did not affect the original purpose of the Act. Sections 22 and 23 of the 1927 Act, Gen.Acts 1927, pp. 575, 576, were as follows:

"Sec. 22. Salaried Employees Not Entitled To Additional Pay. Officers and enlisted men of the Militia employed by the State, who receive monthly salaries from the State for military duties, shall not be entitled to any other pay from the State for military service of any character, provided that the provisions of this section shall not prohibit any officer or enlisted man from receiving pay from the United States for participation in manouvers, camps, field service or other service or duty.

"Sec. 23. Leaves Of Absence For State Employees. All officers and employees of the State of Alabama, who shall be members of the National Guard of Alabama, shall be entitled to leave of absence from their respective duties, without loss of pay, time or efficiency rating, on all days during which they shall be engaged in field or coast defense or other training ordered under the provisions of this Act, provided that leaves of absence granted under the provisions of this section shall not exceed fifteen (15) days at any one time."

A reading of these two sections discloses that they are, in one particular, in conflict. Section 22 prohibits those "who receive monthly salaries from the State for military duties" from receiving "any other pay from the State for military service", while

section 23 gives *all* State employees the right to a leave of absence *with pay* when engaged in training. The addition of the word "civil" in the 1931 Act was for the apparent purpose of clarifying this inconsistency.

Before the addition of the words "or service", leaves of absence, as we have noted above, were limited to periods of training. But members of the Militia could be ordered into the service of the State for other purposes, such as "the enforcement of the law, the preservation of the peace, or for the security of the rights or lives of citizens, or protection of property, in aid and relief of our citizens in disaster, or any similar duty". §§ 7 and 57, Gen. Acts 1927, pp. 566, 568, 569, 589; §§ 39 and 57, Gen.Acts 1931, pp. 687, 698, 706. It is obvious that the purpose of adding the words "or service" was to authorize leave benefits when performing these other types of duty "ordered under the provisions of this Act". Except in this respect, the original purpose of the Act was not changed by this addition.

In so extending such benefits the legislature saw fit, also, in the 1931 Act, to change the proviso contained in the 1927 Act. The 1927 Act provided "that leaves of absence granted under the provisions of this section shall not exceed fifteen (15) days at any one time". The 1931 Act provided that "leaves of absence *with pay,* granted under the provisions of this Section, shall not exceed eighteen (18) days at any one time".

The 1927 Act was a straight fifteen day limitation, "at any one time", with respect to *all* of the benefits, that is, "without loss of pay, time or efficiency rating". The effect of the 1931 Act was to extend the length of time an employee could be absent *with pay* from 15 to 18 days "at any one time", and to nullify the former limitation with respect to the other benefits, that is, "without loss of * * * time, or efficiency rating". This change, to be sure, was a broadening of the leave benefits but it does not indicate an intention to alter the prior basic purpose of the law, as hereinabove stated.

In 1936 a new Act, designated as the Military Code of Alabama, was passed regulating the military and naval forces of Alabama, Gen. & Local Acts, Special Session, 1936, pp. 105–165, Act No. 143, approved April 22, 1936. Section 12 of this Act was as follows:

"Section 12. Leaves of Absence for State Employees: All officers and employees of the State of Alabama *or any Agency or Instrumentality thereof,* who shall be *active* members of the National Guard or Naval Militia of Alabama shall be entitled to leave of absence from their respective civil duties without loss of pay, time, or efficiency rating on all days during which they shall be engaged in field or coast defense or other training or service ordered under the provisions of this Act. Provided: that leaves of absence with pay, granted under the provisions of this Section, shall not exceed eighteen days at any one time."—[Italics supplied].

The italicized words were new.

The prior law was limited to "officers and employees of the State of Alabama". The amendment broadened this to include the officers and employees of "any Agency or Instrumentality" of the State. It is clear that the only objective of this amendment was to extend the same leave benefits to officers and employees of municipalities, and other agencies and instrumentalities of the State, which theretofore had been confined solely to State officers and employees. Confining the law to "active" members certainly was not a broadening of its prior application.

■ This court has held that a city is an agency or instrumentality of the State. City of Bessemer v. Personnel Board for Jefferson County, 240 Ala. 411(3), 413, 199 So. 815; Walls v. City of Guntersville, 253 Ala. 480(19), 486, 45 So.2d 468. This seems to be the holding generally. 62 C.J.S., Municipal Corporations, § 3.

Section 12 of the 1936 Act was amended in 1939, Gen.Acts 1939, pp. 774, 777, Act No. 509, approved Sept. 22, 1939, to read as follows:

"Section 12. Military Leave for *Government* Employees: All officers and employees of the State of Alabama, *or of any county, municipality, or other agency or political subdivision thereof,*

who shall be active members of the Alabama National Guard or Naval Militia, *or of the Officers' Reserve Corps of the United States Army, or of the United States Naval Reserves,* shall be entitled to military or naval leave of absence from their respective civil duties *and occupations* on all days that they shall be engaged in field or coast defense or other training or *on other* service ordered under the provisions of this Act, *or of the National Defense Act, or of the Federal laws governing the United States Naval Reserves,* without loss of pay, time, efficiency rating, *annual vacation, or sick leave,* but no such person granted such leave of absence with pay shall be paid for more than *twenty-one working* days at any one time."—[The material changes made are italicized.]

The foregoing 1939 amendment was carried verbatim into the 1940 Code, Title 35, § 12, and has remained unchanged. As noted above, it is on this section that petitioners base their claim to accumulated leave, both annual vacation and sick leave.

This brings us, then, to a consideration of the meaning and effect of the 1939 amendment of Section 12. Our view is that the changes made in this section do not show a legislative intent to alter the prior basic purpose of the law, with its limited application, as observed above.

The first change made was to spell out in more detail the officers and employees covered by the Act, although the 1936 amendment, in legal effect, did the same thing.

■ Prior to the 1939 amendment only members of the National Guard and Naval Militia came under the law. This amendment added members "of the Officers' Reserve Corps of the United States Army, or of the United States Naval Reserves". There was, of course, no provision in the State Military Code, of which Section 12 above was a part, for ordering members of the Officers' Reserve Corps of the United States Army or the United States Naval Reserve, as such, to engage in training or other service. This could be done only as provided by the Federal laws relating to those components. In order, therefore, to

provide protective coverage for their members to the same extent—and we do not believe it was intended to broaden it—as provided for members of the National Guard and Naval Militia, it was necessary to make reference to such Federal laws, as was done by the 1939 amendment. We do not believe it was intended by this amendment to give to members of the Officers' Reserve Corps and Naval Reserve anything more than was being given already to members of the National Guard and Naval Militia. It seems to us that the purpose was to equalize leave benefits and not to broaden or extend them well beyond the prior intendment of the law. The following rule, as stated in the case of Harrington v. State ex rel. Van Hayes, 200 Ala. 480(9), 483, 76 So. 422, 425, is applicable here:

"In the revision of the statutes, an alteration of phraseology, the omission or addition of words, will not necessarily change the operation or construction of former statutes; the language of the statutes as revised, or the legislative intent to change the former statute, must be clear before it can be pronounced that there is a change of such statute in construction and operation. * * *."

We recognize that a literal reading of extracted portions of Section 12 gives a measure of support to appellees' contention; for instance, the following is taken from Section 12:

"All * * * employees * * * of any * * * municipality * * * who shall be active members * * * of the United States Naval Reserves, shall be entitled to * * * naval leave of of absence * * * on all days that they shall be engaged * * * on * * * service ordered under the provisions of * * * the Federal laws governing the United States Naval Reserves, without loss of * * * annual vacation, or sick leave * * *."

■ But this extraction process disregards consideration of fundamental rules of statutory construction. The exact and literal reading of a statute, or any part thereof, should be rejected when, after consideration of the law as a whole, in the

312

light of its history and the purposes to be accomplished, it is apparent that such exact and literal interpretation would not carry out the legislative intent. Here we have a statute which is a part of the State Military Code governing all of those military elements under State control. Nowhere in said Code, except in Section 12, is there any reference to members of the Officers' Reserve Corps or of the Naval Reserve. The State, as we have observed already, has no control whatever over members of these two components. They come under Federal laws and regulations exclusively. So, it seems to us, their inclusion in Section 12 of the 1939 amendment was nothing more than as a corollary to the benefits already being given members of the National Guard and Naval Militia; and that there was no intention to broaden or extend such benefits.

We are clear to the point, after full consideration of the statute as a whole, in the light of its history, that it was the legislative intent to restrict application of the statute in accordance with our conclusions in this case. To hold otherwise would be to extend the operation of the statute by judicial construction beyond its intended objective. This we should refrain from doing. It is not the courts' prerogative to "legislate by construction", that is, by reading into a statute something that was not intended by the legislature.

Accordingly, this cause is due to be reversed and an order of rendition entered.

Reversed and rendered.

LIVINGSTON, C. J., and FOSTER and SIMPSON, JJ., concur.