MAIN, Justice.
Rochester-Mobile, LLC, and Salzman-Mobile, LLC (hereinafter referred to as "Rochester-Salzman"), appeal from a judgment entered against them in a declaratory-judgment action relating to the validity of a 25-year sublease between Rochester-Salzman and Southern Family Markets of Mobile South University BLVD, LLC ("SFM"), and C & S Wholesale Grocers, Inc. ("C & S"). The trial court concluded that because the sublease was not recorded pursuant to § 35-4-6, Ala. Code 1975, the sublease was void for the remainder of the term extending beyond 20 years. We reverse and remand.
I. Facts and Procedural History
In July 1974, Multiple Properties, Ltd., entered into a ground lease with Casto Developers, a general partnership, related to a parcel of property located in Mobile County. The lease was for an initial term of 31 years with 5 successive 10-year renewal options. The lease agreement was duly recorded in the Probate Office for Mobile County on August 21, 1974. The land was developed as a shopping center, and Bruno's, Inc. ("Bruno's"), then obtained Casto Developers' leasehold interest.
On June 27, 1997, Bruno's entered into a sale-leaseback financing arrangement with Rochester-Salzman. In exchange for $7,000,000, Bruno's assigned its interest under the ground lease to Rochester-Salzman. On that same day, Rochester-Salzman, now the lessee by virtue of the assignment, subleased the premises back to Bruno's in a document titled "Lease and Agreement" ("the sublease"). The sublease was for a term of 25 years with 5 additional, successive 5-year renewal options. Bruno's agreed to make monthly basic rent payments of $55,500. The sublease was not recorded in the office of the judge of probate.
In 2009, Bruno's filed for bankruptcy. As a part of the bankruptcy proceedings, SFM was assigned the rights and assumed the obligations of Bruno's under the sublease. C & S guaranteed SFM's obligations under the sublease.
In 2015, Multiple Properties, LLC, the successor to Multiple Properties, Ltd., initiated this lawsuit, seeking a declaration as to whether Rochester-Salzman or Rochester-Salzman's mortgagees had timely exercised the option to renew the ground lease. C & S was added as a defendant at some time following the original complaint. Rochester-Salzman then filed a cross-claim against C & S and a third-party claim against SFM alleging violations of the sublease. In response, C & S and SFM filed a cross-claim and counterclaim, respectively, against Rochester-Salzman. Their claims sought a judgment declaring *1142 that, because the sublease was not recorded, it was due to terminate on the expiration of 20 years pursuant to § 35-4-6. Rochester-Salzman answered the cross-claim/counterclaim, admitting that the sublease had not been recorded within one year of its execution but denying that any such recordation was necessary under § 35-4-6. It further alleged that the sublease contained separate and independent agreements, promises, and covenants that continued in force notwithstanding the termination of the sublease. Rochester-Salzman then filed an additional counterclaim, requesting a judgment declaring that C & S and SFM continued to be obligated to Rochester-Salzman for the full 25-year term of the sublease.
C & S and SFM moved for judgment on the pleadings on the cross-claim/counterclaim, contending that the pleadings established that the sublease was not recorded within 1 year of its execution and that, therefore, the sublease was due to terminate on June 25, 2017, 20 years after it was executed, pursuant to § 35-4-6. Rochester-Salzman opposed the motion and moved for a summary judgment on its declaratory-judgment counterclaim. Rochester-Salzman argued that the recording of the ground lease satisfied the recording requirement of § 35-4-6. Rochester-Salzman also contended that the payment obligations contained in the sublease were part of a financing transaction and that those obligations were independent and enforceable regardless of the termination of the sublease agreement.
On October 3, 2016, the trial court entered an order granting C & S and SFM's motion for a judgment on the pleadings and denying Rochester-Salzman's motion for a summary judgment. The trial court held as follows:
"(1) The Lease and Agreement among [Rochester-Salzman] as Landlord and [Bruno's] as Tenant [d]ated June 27, 1997 ('the Lease') which is the subject of the parties' respective motions is a lease covered by Alabama Code [1975,] § 35-4-6.
"(2) It is undisputed that the Lease was not recorded within one year of its execution.
"(3) The Lease is unambiguous.
"(4) Although the Lease provides for a principal term greater than twenty years, the Lease's term is twenty years pursuant to Alabama Code [1975,] § 35-4-6 [,] because it was not recorded within one year of execution. The Lease expires on June 26, 2017.
"(5) To the extent the Lease by its terms extends beyond June 26, 2017, the Lease is void and unenforceable pursuant to Alabama Code [1975,] § 35-4-6. As a result, any rights or obligations (monetary or non-monetary) of C & S, SFM Mobile, or Rochester-Salzman which would otherwise accrue under the Lease or the Guaranty of Lease after June 26, 2017, including without limitation any obligation of C & S or SFM Mobile to pay Rent or Additional Rent (as defined in the Lease), are likewise void and unenforceable pursuant to Alabama Code [1975,] § 35-4-6."
On January 24, 2017, the trial court certified its October 3, 2016, order as final pursuant to Rule 54(b), Ala. R. Civ. P. Rochester-Salzman appealed.
II. Standard of Review
Our review of a judgment on the pleadings is de novo:
"When a motion for a judgment on the pleadings is made by a party, 'the trial court reviews the pleadings filed in the case and, if the pleadings show that no genuine issue of material fact is presented, the trial court will enter a judgment for the party entitled to a judgment *1143 according to the law.' B.K.W. Enters., Inc. v. Tractor & Equip. Co., 603 So.2d 989, 991 (Ala. 1992). See also Deaton, Inc. v. Monroe, 762 So.2d 840 (Ala. 2000). A judgment on the pleadings is subject to a de novo review. Harden v. Ritter, 710 So.2d 1254, 1255 (Ala. Civ. App. 1997).... [I]n deciding a motion for a judgment on the pleadings, the trial court is bound by the pleadings. See Stockman v. Echlin, Inc., 604 So.2d 393, 394 (Ala. 1992)."
Universal Underwriters Ins. Co. v. Thompson, 776 So.2d 81, 82-83 (Ala. 2000).
III. Analysis
The key inquiry in this case is whether § 35-4-6 applies to a sublease. Section 35-4-6 provides:
"No leasehold estate can be created for a longer term than 99 years. Leases for more than 20 years shall be void for the excess over said period unless the lease or a memorandum thereof is acknowledged or approved as required by law in conveyances of real estate and recorded within one year after execution in the office of the judge of probate in the county in which the property leased is situated."
Rochester-Salzman argues that § 35-4-6 should not be read to include a sublease. First, it notes that the statute, which imposes restrictions on the freedom to contract in the conveyance of property interests, is in derogation of the common law and, therefore, must be strictly construed. See Foster v. Martin, 286 Ala. 709, 712, 246 So.2d 435, 438 (1971) (noting that a statute in derogation of the common law must be strictly construed and that such a statute "will not be extended further than is required by the letter of the statute"). Next, Rochester-Salzman contends that the terms "lease" and "sublease" are not synonymous:
"A lease and a sublease involve different parties and different relationships of the parties to the real property involved. In a lease, an owner of land conveys a possessory interest in that land to a lessee for some period of time. A sublease involves not the landowner, but the lessee and a third party to whom the lessee conveys some portion of its leasehold interest."
(Rochester-Salzman's brief, at 30-31.) Rochester-Salzman further notes that the legislature knows how to include subleases in the express language of statutes, and it cites a multitude of examples from the Alabama Code in which the terms "lease" and "sublease," or derivatives of those terms, are used in the same section. Finally, it contends that the legislative purpose of § 35-4-6 -preventing landowners from tying up property by lease for long terms-is not served by requiring recording of a sublease, which, by definition, cannot add to the term of a master lease. For these reasons, Rochester-Salzman argues, § 35-4-6 does not apply to subleases.
SFM and C & S, on the other hand, contend simply that a sublease is, in fact, a lease. They argue that the language of § 35-4-6 unambiguously applies to all leases, including subleases.
In interpreting a statutory provision, "a court is required to ascertain the intent of the legislature as expressed and to effectuate that intent." Tuscaloosa Cty. Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa Cty., 589 So.2d 687, 689 (Ala. 1991).
"Words used in the statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language *1144 of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992) ). " 'In the absence of a manifested legislative intent to the contrary, or other overriding evidence of a different meaning, legal terms in a statute are presumed to have been used in their legal sense.' " Crowley v. Bass, 445 So.2d 902, 904 (Ala. 1984) (quoting 2A D. Sands, Sutherland Statutory Construction § 47.30 (4th ed. 1973)).
"Our review of an issue concerning the intent of the legislature is confined to the terms of the legislative act itself, unaided by the views of observers of or participants in the legislative process. City of Daphne v. City of Spanish Fort, 853 So.2d 933, 945 (Ala. 2003). We can look to " 'the history of the times, the existing order of things, the state of the law when the instrument was adopted, and the conditions necessitating such adoption.' " City of Birmingham v. Hendrix, 257 Ala. 300, 307, 58 So.2d 626, 633 (1952) (quoting In reUpshaw, 247 Ala. 221, 223, 23 So.2d 861, 863 (1945) ). We can also look to an act's ' "relation to other statutory and constitutional provisions, view its history and the purposes sought to be accomplished and look to the previous state of law and to the defects intended to be remedied." ' Hendrix, 257 Ala. at 307, 58 So.2d at 633 (quoting Birmingham Paper Co. v. Curry, 238 Ala. 138, 140, 190 So. 86, 88 (1939) ).
King v. Campbell, 988 So.2d 969, 984 (Ala. 2007).
After careful consideration of the parties' arguments, and in light of the applicable canons of statutory interpretation, we conclude that the term "lease" as used in § 35-4-6 does not include a sublease.
First, the terms "lease" and "sublease" are not altogether synonymous. A lease is a contract by which the "possessor of real property conveys the right to use and occupy the property in exchange for consideration." Black's Law Dictionary 1024 (10th ed. 2014). Although a sublease is a species of lease, it has a distinct, refined legal meaning. A "sublease" is defined as "[a] lease by a lessee to a third party, conveying some or all of the leased property for a term shorter than that of the lessee, who retains a right of reversion." Black's, supra, at 1652. Indeed, a body of caselaw exists regarding the determination of whether an instrument is a sublease or an assignment and the resulting ramifications. See, e.g., Pantry, Inc. v. Mosley, 126 So.3d 152, 159 n.2 (Ala. 2013) ; Johnson v. Moxley, 216 Ala. 466, 468, 113 So. 656, 657 (1927) ; and Johnson v. Thompson, 185 Ala. 666, 668-89, 64 So. 554, 555 (1914).
That the drafters of § 35-4-6 did not intend the term "lease" to include a sublease finds ample support among the other provisions of the Alabama Code in which the legislature has used both "lease" and "sublease," or derivatives of those terms, in the same provision.[1] " ' "There is *1145 a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used." ' " Richardson v. Stanford Props., LLC, 897 So.2d 1052, 1058 (Ala. 2004) (quoting Sheffield v. State, 708 So.2d 899, 909 (Ala. Crim. App. 1997), quoting in turn 82 C.J.S. Statutes § 316, at 551-52 (1953) ). Thus, to hold that the term "lease" includes a sublease would render the term "sublease" superfluous in those numerous other statutes in which both terms, or derivatives of those terms, were used. Moreover, when the legislature has intended that the term "lease" include a "sublease," it has demonstrated the ability to expressly indicate its intent. See § 7-2A-103(1)(j), Ala. Code 1975 (defining "lease" and providing that, "[u]nless the context clearly indicates otherwise, the term [lease] includes a sublease").
Furthermore, the history and legislative purpose of § 35-4-6 support the proposition that § 35-4-6 was not intended to apply to subleases. The initial version of § 35-4-6, adopted in 1852, prohibited the creation of a leasehold estate for a longer term than 20 years.[2] The policy underlying the statute was to prevent landowners from tying up property by leasing for long terms.[3] Harco Drug, Inc. v. Notsla, Inc., 382 So.2d 1, 3 (Ala. 1980) ("The policy expressed by the statute is that a person should not be permitted to tie up his property by a lease for a period greater than twenty years."); Tennessee Coal, Iron & R.R. Co. v. Pratt Consol. Coal Co., 156 Ala. 446, 448, 47 So. 337, 337 (1908) ("The policy of the law is clearly expressed in the statute that a person shall not be allowed to tie his property up by lease for a longer period than 20 years ...."). Necessarily, the original version of the statute would have had no application to a sublease because, given that the original lessee could *1146 never have possessed a leasehold interest for a term greater than 20 years, the lessee could not have transferred a leasehold interest for a greater term. Thus, the original version of the statute placed no restrictions on a lessee's right to sublet a leasehold estate.
The statute was amended in 1911 to create what is, essentially, the current § 35-4-6.[4] The 1911 amendment increased the maximum term of a lease to 99 years, but retained a vestige of the prior 20-year limit, providing that the term of any lease that extended beyond 20 years was void unless it had been recorded within 1 year of the execution of the lease. We have stated that the "plain purpose" of the recording requirement of § 35-4-6"is to provide notice to innocent purchasers of property who otherwise might purchase property and then discover an unrecorded lease on the property that deprives them of the benefits of ownership for up to 99 years." Eastwood Mall Assocs., Ltd. v. All American Bowling Corp., 518 So.2d 44, 46 (Ala. 1987).
The recognized legislative purpose of § 35-4-6 is not furthered by applying the recording requirement to subleases. First, a sublease by its nature cannot extend the lease term and thus cannot tie up property for any term longer than that held by the lessee under the master lease. Likewise, the recording of the master lease gives notice of the maximum length for which the property at issue is encumbered by lease. Thus, the legislative purpose of the statute is satisfied upon the recording of the master lease.
Moreover, once a leasehold estate of longer than 20 years-fully valid under § 35-4-6 -is established, there is no readily apparent basis for further restricting the alienability of that leasehold interest. In support of this point, we recognize that § 35-4-6 does not, by its terms, apply to assignments.[5] Thus, a lessee who holds a leasehold for a term of more than 20 years can freely assign the entirety of his leasehold estate without the necessity of recording the assignment under § 35-4-6. Applying the statute to subleases, however, restricts a lessee's ability to transfer the estate for a lesser term. It seems to us that, if a leasehold estate is valid in its sum, it must also be valid-and alienable-in its parts.
Finally, in addition to the above-referenced canons of statutory construction, Alabama law has long provided that "[s]tatutes in derogation or modification of the common law are strictly construed." Arnold v. State, 353 So.2d 524, 526 (Ala. 1977). Statutes are presumed to not alter the common law in any way not expressly declared. Arnold, supra. Likewise, "[s]tatutes or ordinances which impose restrictions on the use of private property are strictly construed and their scope cannot be extended to include limitations not therein included or prescribed." Smith v. City of Mobile, 374 So.2d 305, 307 (Ala. 1979). We agree that § 35-4-6, which *1147 restrains the ability to transfer a leasehold interest, is in derogation of the common law, mandating the narrowest reasonable construction.
For the above-stated reasons, therefore, we hold that the sublease in this case is not void under the provisions of § 35-4-6. Accordingly, the trial court erred in entering a judgment on the pleadings in favor of SFM and C & S and against Rochester-Salzman. Given our holding, we pretermit discussion of the issue whether the sublease contained separate agreements that are independently enforceable, regardless of the validity of the sublease.
IV. Conclusion
The judgment of the trial court is reversed and the case remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, J., concur.
Murdock and Bryan, JJ., concur in the result.

See § 8-15-31(5), Ala. Code 1975 (defining "owner" of self-service storage facility as "owner, operator, lessor or sublessor of a self-service storage facility"); § 11-47-14.1(b), Ala. Code 1975 (providing that municipalities "may authorize the lessees in ... leases and their subleasees to construct or maintain buildings and other improvements upon the properties so leased and collect wharfage dues thereon and to sublet all or any part of said wharfs, buildings and other improvements"); § 11-88-7.1(f), Ala. Code 1975 (providing that county may "acquire by lease or sublease" property comprising a water system, sewer system, or fire-protection facility); § 11-89A-2(18), Ala. Code 1975 (defining "revenues" as all income or other charges received from, among other sources, a "lease [or] sublease"); § 11-97-2(21), Ala. Code 1975 (defining "revenues" as all rentals or other income received by utility-services facility from sale, "lease, [or] sublease"); § 24-8-3(10), Ala. Code 1975 (defining for purpose of Alabama Fair Housing law, "to rent" as "to lease, to sublease"); § 26-1A-204(2), Ala. Code 1975 (providing that power of attorney granting general authority with respect to real property authorizes agent to both "lease" and "sublease" property); § 26-1A-205(2), Ala. Code 1975 (providing that power of attorney granting general authority with respect to tangible personal property authorizes agent to "lease" and "sublease" personal property); § 33-10-19, Ala. Code 1975 (providing that commission created in that chapter "may lease or sublease lands leased from the State of Alabama"); § 35-8-4, Ala. Code 1975 (deeming each condominium unit real property, the ownership of which may be by "lease or sublease"); § 35-8A-412(a), Ala. Code 1975 (requiring declarant of condominium containing conversion buildings to give notice of conversion to "each of the residential tenants, and any residential subtenant in possession"); § 35-9-60, Ala. Code 1975 (providing that landlord of any storehouse or other building shall have a lien on the goods, furniture, and effects "belonging to the tenant, and subtenant, for rent"); § 35-9A-141(7), Ala. Code 1975 (defining, for purpose of Residential Landlord and Tenant Act, "landlord" to mean "the owner, lessor or sublessor of the dwelling unit"); and § 41-9-44(a)(6), Ala. Code 1975 (providing that Council on the Arts is authorized to "lease or sublease" real property).

"No leasehold estate can be created for a longer term than twenty years."

An early version of a statute or constitutional provision prohibiting long-term leases appeared in New York's constitution of 1846 and prohibited leases of agricultural land for terms longer than 12 years. The framers of that particular provision deemed long-term leases undesirable because, it was believed, tenants were unwilling to make improvements to land as to which they had no independent ownership. Stephens v. Reynolds, 6 N.Y. (2 Seld.) 454, 457 (1852).

The statute was amended in 1989 to permit recording a memorandum in lieu of the actual lease.

We have explained the differences between an assignment and a sublease as follows:
" 'In general terms, the difference between an assignment and a sublease is that an assignment transfers the lessee's entire interest in the property, whereas a sublease transfers only a portion of that interest, with the original lessee retaining a right of reentry at some point during the unexpired term of the lease.' "
Pantry, Inc. v. Mosley, 126 So.3d at 159 n.2 (quoting 69 Am. Jur. Proof of Fact 3d 191, Circumstances Establishing Landlord's Unreasonable Withholding of Consent to Assignment or Sublease § 4 (2002) (footnotes omitted)).