227 So.2d 396

**OPINION OF THE JUSTICES.**

No. 197.

Supreme Court of Alabama.

Aug. 19, 1969.

Honorable Albert P. Brewer
Governor of Alabama
State Capitol
Montgomery, Alabama

Dear Governor Brewer:

We reply to your questions propounded to us concerning House Bill 342. Said bill,

together with the amendments thereto and your request for this opinion, will be set out by the reporter.

 In answering Question No. 1, assuming that the bill "as presently written," includes the amendments thereto, we answer Question No. 1 in the affirmative.

We answer Question No. 2 in the affirmative. Our answer to your Question No. 2 is the basis for our answer to Question No. 1.

Section 111 of the Constitution provides:

"No bill introduced as a general law in either house of the legislature shall be so amended on its passage as to become a special, private or local law."

House Bill 342 was introduced as a general bill, but the amendments (Section 4) converted it into a local bill. Each of these amendments could apply to only one county. It has long been recognized that an act which was intended to apply to only one county, which is named, is a local act. Kyle v. Wiggins, 212 Ala. 116, 102 So. 145; Kyle v. Wiggins, 20 Ala.App. 347, 102 So. 143.

The amendments to House Bill 342 (Section 4) do not name the counties, but the population classifications in the several amendments are so narrow that it is plain that only one particular county was intended to be affected. Examples are:

Population range 21,900—22,300 applies only to Franklin County.

Population range 51,000—56,000 applies only to Walker County.

Population range 22,350—23,000, 17,500 to 17,800, and 18,000—18,900 apply only to Monroe County, Conecuh County and Wilcox County, respectively.

Population range 22,000—22,350 applies only to Geneva County.

Population ranges 14,000—14,900 and 21,-000—21,850 apply· only to Winston County and Marion County, respectively.

Population range 60,000—61,000 applies only to Morgan County.

The same vice is present in all of the other provisions of Section 4.

The law is settled in this state as to the conditions justifying a population classification in a bill or act. We quote from a recent case concerned with voting and elections, Duncan v. Meeks, 281 Ala. 452, 204 So.2d 483, 485:

"* * * The difference in population must be substantial and the classification must be made in good faith and must be reasonably related to the purposes to be effected by the act. If these conditions exist, the fact that at the time the law may be applicable to only one political subdivision of the state will not suffice for its condemnation. On the other hand, if the classification is not in good faith, bears no reasonable relation to the difference in population upon which it rests in view of the purpose to be effected by such legislation and was arbitrarily fixed, the law will be condemned as local and as having been passed merely under the guise of a general law in violation of the Constitution. Reynolds v. Collier, 204 Ala. 38, 85 So. 465; State ex rel. Brooks v. Gullatt, 210 Ala. 452, 98 So. 373; Vaughan v. State ex rel. Dawson, 212 Ala. 258, 102 So. 222; State ex rel. Saltsman v. Weakley, 153 Ala. 648, 45 So. 175; Ward v. State ex rel. Lea, 224 Ala. 242, 139 So. 416."

We do not think that the population classifications in Section 4 of House Bill 342 are substantial, or that they are made for any reason except to exclude certain specific counties from the operation of the proposed law, or that any of them are reasonably related to the purposes to be effected by the act.

We note also that these amendments were not enacted as required by the last sentence of Section 104 of the Constitution.

In our opinion, the amendments listed in Section 4 so amended the bill introduced as a general bill that it became a local bill.

insofar as certain counties are concerned under Section 111 of the Constitution, and since it was not advertised as required by Section 106 of the Constitution, House Bill 342 is unconstitutional, unless saved by the severability clause.

In arriving at this conclusion, we took into consideration the case of State ex rel. Collman v. Pitts, 160 Ala. 133, 49 So. 441, and similar cases, where this Court held that a general law, relating to prohibition of liquor, was not converted into a local law by virtue of a proviso which retained certain local laws already passed. There, the court said, in part:

"We do not wish to hold that a law which might apply in the main to a particular subdivision of the state would become a general law because of the fact that some minor or insignificant feature of same was made applicable to the entire state, for the sole purpose of avoiding the requirements of section 106 of the Constitution of 1901 as to notice, etc., and that it would answer to the definition of section 110; but we do hold that when a law is passed and which bona fide, as to some of its material and important features, applies to the whole state, it will not be converted into a local law, because it does not operate in its every detail throughout the state. * * * We are not willing to hold that the Constitution means that a law is not a general one, unless it operates in its every detail throughout the state, notwithstanding it may have a bona fide application to the entire state in its material parts, for to do so would relegate us almost exclusively to local laws for relief, when it was the manifest purpose of the present Constitution to dispense with local laws, as far as practicable, when the relief can be obtained by a general law."

That principle has no application here. The "material and important features" of House Bill 342 could have *no* application in the exempted counties, could not apply to the whole state because of the exemptions and exclusions included in Section 4, and,

as already pointed out, the population classifications in Section 4 are not substantial; they are arbitrary just so as to exclude particular counties and bear no reasonable relation to the purposes to be effected and are invalid. Ward v. State ex rel. Lea, 224 Ala. 242, 139 So. 416.

We are further requested to express our opinion as to whether said bill is unconstitutional in its entirety or, due to the severability clause contained therein, the above ruling of unconstitutionality is restricted to the amendments thereto (Section 4).

■ The responsibility of the Supreme Court is to give effect to the legislative intent where it is manifested. State v. Union Tank Car Co., 281 Ala. 246, 201 So.2d 402.

As indicated above, House Bill 342, as passed by the legislature, exempted certain counties from the operation of the bill, such exemptions being based on population classifications. We are not here concerned with the motives which prompted individual members of the legislature to vote as they did on the measure. The following from Wiseman v. Madison Cadillac Co., 191 Ark. 1021, 88 S.W.2d 1007, 1009, 103 A.L.R. 1208, cited with approval by this Court in James v. Todd, 267 Ala. 495, 103 So.2d 19, appeal dismissed 358 U.S. 206, 79 S.Ct. 288, 3 L.Ed. 2d 235, is applicable:

"The intention of the Legislature, to which effect must be given, is that expressed in the statute, and the courts will not inquire into the motives which influenced the Legislature or individual members in voting for its passage, nor indeed as to the intention of the draftsman or of the Legislature so far as it has not been expressed in the act. So in ascertaining the meaning of a statute the court will not be governed or influenced by the views or opinions of any or all of the members of the Legislature, or its legislative committees or any other person." Id, 267 Ala. at 506, 103 So.2d at 28.

■ It is a well-established rule in this State that a severability clause should be

given effect where possible in order to save a legislative enactment. Allen v. Walker County, 281 Ala. 156, 199 So.2d 854; Wilkins v. Woolf, 281 Ala. 693, 208 So.2d 74; San Ann Tobacco Co. v. Hamm, 283 Ala. 397, 217 So.2d 803. Such a clause or provision in an act is to be given its full scope and effect. Shuttlesworth v. Birmingham Bd. of Ed. of Jefferson County, Alabama, 162 F.Supp. 372, affirmed 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145.

When that which we have declared unconstitutional is stricken, there remains an act complete in itself, sensible and capable of being executed. The striking of the invalid sections does not overthrow the entire act. Alabama Public Service Commission v. AAA Motor Lines, Inc., 272 Ala. 362, 131 So.2d 172, cert. denied 368 U.S. 896, 82 S.Ct. 173, 7 L.Ed.2d 93.

The severability clause in House Bill 342, declaring that the unconstitutionality or invalidity of any part of the Act shall not affect the part of the Act which remains, serves to assure this Court that the legislature intended that the Act should be divisible, and that the invalidity of any part thereof should not affect the validity of remaining portions of such Act. Opinion of Justices, 247 Ala. 195, 23 So.2d 505. Therefore, our answer is that the unconstitutionality of the bill as presently written is overcome by the striking of the amendments thereto.

We are, therefore, of the opinion that when the amendments included in Section 4 are stricken from the bill, the remainder of the bill is not violative of Section 111 of the 1901 Constitution of Alabama.

Respectfully submitted,

J. ED LIVINGSTON
Chief Justice

THOMAS S. LAWSON
ROBERT T. SIMPSON
JAMES S. COLEMAN, JR.
Justices.

We concur in the answers to Questions 1 and 2, but as to Question 3, we opine that the separability clause, Section 6 of the bill, does not make the bill constitutional. When the amendments in Section 4 were added, the bill was converted from a general bill to a local bill. Therefore, as already noted, the bill became unconstitutional because it had not been properly advertised as required by Section 106 of the Constitution.

All rules for construing statutes must be regarded as subservient to the end of determining the legislative intent; and such intent must be determined from the language of the statute itself if it is unambiguous. Glencoe Paving Co. v. Graves, 266 Ala. 154, 94 So.2d 872; State v. Thames, Jackson, Harris Co., 259 Ala. 471, 66 So.2d 733.

It is clear that the intent of the Legislature was to exempt cities in certain specified counties from the operation of the proposed law. Each of these amendments could have been defeated or excluded had the Legislature so desired. The large number of exclusions and amendments give weight to the conclusion that both the House and the Senate intended that the bill not apply in certain counties, just as it should not apply in any town in the state. (Section 1).

It is both possible and probable that some representatives and senators voted for the bill on final passage because they thought they were secure in the knowledge that the county or counties they represented had been specifically excluded from the operation of the bill. The bill specifically exempts 23 counties, and the Legislature took the pains to enumerate them by population classifications, but under the majority opinion, a usual separability clause, which is general and not specific, is given more weight in ascertaining the intent of the Legislature than the detailed and specific provisions of Section 4 of the bill.

Thus, a general and customary sentence found in most legislative enactments is permitted to make constitutional a bill which all the justices participating in this opinion agree is a local bill and unconstitutional except for the separability clause. This would make the law effective in 23 counties

whose legislative delegations thought had been removed from the bill's operation, and specifically contrary to the plain and announced intention of the Legislature that the bill did not affect these 23 counties. It is doubtful if ever before a separability section in a bill put a law into effect in over one-third of the counties in the state when the Legislature had plainly, specifically and intentionally excluded those counties from the operation of the bill.

To give effect to the separability clause by striking Section 4 would make the proposed law effective in many counties in which the Legislature specifically had exempted and thus a separability clause would be given more effect than the expressed intention of the Legislature in dealing with numerous counties of the state.

We have not been cited to, or have we found, any case in Alabama which holds that a separability clause in a bill can change it from a local bill to a general bill. We do not think such a clause can nullify the effect of Section 111 of the Constitution.

It would be an anomaly if a general bill could be converted into a local bill by amendments, and after passage as amended, be reconverted into a general bill by invocation of a separability clause. Such a chameleon process in itself is a complete denial of the legislative intent and legislative processes.

We think we are fortified in our opinion by the last sentence of Section 104 of the Constitution which reads:

"The legislature shall pass general laws for the cases enumerated in this section, provided that nothing in this section or article shall affect the right of the legislature to enact local laws regulating or prohibiting the liquor traffic; but no such local law shall be enacted unless notice shall have been given as required in section 106 of this Constitution."

It is evident that the Constitution permits local laws "regulating or prohibiting the liquor traffic" and the Legislature may constitutionally enact such local laws at any time concerning every affected city included in H.B. 342. But it is also specified that the law must be advertised as required by Section 106. H.B. 342 does not meet this requirement. It is a local bill and is not converted into a general bill by the separability clause.

Respectfully submitted,

PELHAM J. MERRILL,

ROBERT B. HARWOOD
Justices.

Appendix A

August 12, 1969

Honorable Chief Justice and Associate Justices
Supreme Court of Alabama
Judicial Building
Montgomery, Alabama 36104

Gentlemen:

Pursuant to the authority vested in me by Section 34, Title 13, Code of Alabama 1940, Recompiled 1958, I respectfully request your opinion on an important constitutional question in connection with House Bill No. 342, a copy of which is attached hereto, which was passed by the Legislature of Alabama during the 1969 Regular Session on the following:

(1) Is House Bill No. 342, as presently written unconstitutional?

(2) Does the adoption of the amendments to House Bill No. 342 exempting certain named counties from the operation and effect of the act constitute a violation of Section 111 of the Constitution of Alabama in that House Bill No. 342 was introduced as a general law and was so amended on its passage as to become a special, private, or local law?

(3) If the amendments to House Bill No. 342 exempting certain named counties from the operation and effect of the act are held to be unconstitutional, is the

entire bill to be held unconstitutional or does the fact that the bill contains a severability clause limit your ruling of unconstitutionality to the foregoing mentioned amendments only?

Under Section 125 of the Constitution, I must take some action within six days, Sundays excepted, after the bill has been presented to me and I would therefore, respectfully request your opinion in time for me to take further action if the bill does not violate our Constitution. Therefore, your prompt attention to this request will be most appreciated.

With best wishes, I am

Sincerely yours,

(s) Albert P. Brewer
Albert P. Brewer
Governor

APB:eb

Enclosure

Appendix B

McElhaney

H. 342

*Enrolled,* An Act, To provide for city elections on legality of sale and distribution of alcoholic beverages in dry counties; and to exempt certain counties, classified by population, from the operation of the Act.

BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

*SECTION* 1. ELECTIONS IN CERTAIN MUNICIPALITIES AFTER MAJORITY VOTE IN COUNTY AGAINST SALE OF ALCOHOLIC BEVERAGES— The governing body of any city having a population of not less than 2,000, according to the most recent federal decennial census, located in a county which has voted against the legal sale and distribution of alcoholic beverages shall, upon receipt of a petition bearing the signatures of 25 percent of the voters residing in the city whose names appeared on the next preceding published list of qualified voters, call an election to determine whether or not alcoholic beverages shall, notwithstanding the results of such previous county election and the consequent dry status of the county as a whole, legally be sold and licensed within the corporate limits of the city.

Except insofar as inconsistent with the holding of a purely municipal election, the provisions of Title 29, Code 1940, relating to the conduct of elections, notice of elections, holding of elections, and determining the results of elections are to be made applicable to any municipal election held hereunder.

The majority of votes cast at such election shall determine the legality within the city of the sale and distribution of alcoholic beverages. If a majority of the votes cast in the election favor the sale and distribution of alcoholic beverages, then such sales shall thereafter be legal and lawful in that city, irrespective of the previous dry status of the county; and the governing body of that city shall notwithstanding any public, special, local or private act whenever passed or the results of any previous or subsequent county election to the contrary, issue appropriate licenses to all qualified applicants. If a majority of the votes cast at such election shall be against the sale of alcoholic beverages then such sales shall be unlawful and illegal unless authorized by a subsequent county-wide or subsequent municipal election.

*SECTION* 2. UNLAWFUL TO SELL ALCOHOLIC BEVERAGES IN DRY COUNTIES—Except as authorized by Section 23 of Title 29, Code 1940, or this Act, it shall be unlawful to sell alcoholic beverages within any county in which the electors have voted against such sales.

*SECTION* 3. This Act is cumulative and does not repeal any law except such as may be in irreconcilable conflict.

*SECTION* 4. The provisions of this Act shall not apply in counties having populations of not less than 51,000 nor

more than 56,000, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 22,350 nor more than 23,000; not less than 17,500 nor more than 17,800; not less than 18,000 nor more than 18,900, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 21,900 nor more than 22,300, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 22,000 nor more than 22,350, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 14,000 nor more than 14,900; not less than 21,000 nor more than 21,850 according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 10,800 nor more than 12,000, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 19,000 nor more than 19,500, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 28,000 nor more than 30,575, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 14,300 nor more than 14,600; not less than 19,500 nor more than 20,000 according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 37,000 nor more than 41,000, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 15,500 nor more than 16,300, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 13,700 nor more than 14,300, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 31,500 nor more than 33,500, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 15,300 nor more than 15,400, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 42,000 nor more than 46,000, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 25,000 nor more than 25,700, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 47,000 nor more than 49,000, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 60,000 nor more than 61,000, according to the most recent federal decennial census.

The provisions of this Act shall not apply in counties having populations of not less than 22,500 nor more than 24,500, according to the most recent federal decennial census.

*Section* 5. This Act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.

*Section* 6. The provisions of this Act are severable. If any part of the Act is declared

invalid or unconstitutional, such declaration shall not affect the part which remains.

Speaker of the House of Representatives

President Pro Tem and Presiding
Officer of the Senate

House of Representatives
August 5, 1969

I hereby certify that the within Act originated in and was passed by the House July 24, 1969 as amended.

John W. Pemberton
Clerk

| Senate | 8/5/69 | Amended and Passed |
| House | 8/5/69 | Concurred in Senate Amendment |