735 So.2d 1156 (1999)
STATE of Alabama, By and Through Attorney General Bill PRYOR ex rel. James T. Jeffers
v.
Cynthia F. MARTIN.
1970109.
Supreme Court of Alabama.
May 14, 1999.
*1157 Michael R. White and Gilda Branch Williams, State Dep't of Education, Montgomery, for appellant.
Solomon S. Seay, Jr., Montgomery, for appellee.
Dorman Walker of Balch & Bingham, L.L.P., Montgomery, for amici curiae Alabama Ass'n of School Boards and Alabama Ass'n of School Administrators.
Hugh R. Evans III, asst. director and general counsel, for amicus curiae State Ethics Comm'n.
PER CURIAM.
The State of Alabama, by and through Attorney General Bill Pryor, acting on the relation of James T. Jeffers, appeals from a judgment denying a petition for a writ of quo warranto, which challenged the right of Cynthia Martin to hold office as a member of the Tallassee City Board of Education. We reverse and remand.
This dispute began with Martin's election to the Tallassee City Board of Education ("BOE"), District 3, on August 27, 1996. At that time, Martin was also employed by the BOE as a teacher in the Tallassee City School System.
On October 9, 1996, the State, on the relation of James T. Jeffers, described as the "Superintendent of Education of the City of Tallassee School System," petitioned the Elmore Circuit Court for a writ of quo warranto. In its petition, the State alleged that Martin was serving as a member of the BOE in violation of Ala.Code 1975, § 16-11-2(b), which, for reasons discussed below, we have parsed as follows:
"[¶ (1)] The members of the city board of education, who shall, except as hereinafter provided, serve without compensation, shall be chosen solely because of their character and fitness, but no person shall be appointed or elected to this board pursuant to this section who is subject to the authority of the board.
"[¶ (2)] In cities having populations of not less than 50,000 nor more than 60,000 according to the most recent federal decennial census, and the City of Attalla, not more than one classroom teacher employed by the board may serve as a board member and also as a classroom teacher."
The State further alleged that Martin's serving as a board member, while she was employed as a classroom teacher, constituted a "conflict of interest," in violation of the Alabama Code of Ethics for Public Officials (the "Ethics Act"), Ala.Code 1975, §§ 36-25-1 to -30, as amended by Act No. 95-194, 1995 Ala. Acts 269. The State sought a judgment prohibiting Martin from serving on the BOE.
Martin answered the petition by asserting the following defenses: (1) that the State's petition was untimely; (2) that applying § 16-11-2(b), as amended, or the Ethics Act to remove her from office would violate her right to due process of law and her right to equal protection of the laws, as guaranteed by the Fourteenth Amendment of the United States Constitution, and that her removal would violate 42 U.S.C. § 1973 et seq. (the Voting Rights Act of 1965); (3) that the Ethics Act is not applicable; (4) that § 16-11-2(b), as a whole, is unconstitutional because one of its amendments did not conform to the requirements of Ala. Const.1901, §§ 105 and 106; and (5) that § 16-11-2(b), as a whole, is unconstitutional because ¶ (2) of the act contains population classifications that bear no rational relation to the purpose of the act and because ¶ (2) contains an impermissible "double classification" scheme.
On July 1, 1997, the trial court entered a judgment denying the petition. The trial court did not find that the State's petition was untimely, nor did it hold that applying § 16-11-2(b) or the Ethics Act to remove Martin from office would violate the Voting Rights Act of 1965, Martin's right to due process of law, or Martin's right to equal protection. Instead, the trial court held that the Ethics Act is inapplicable and *1158 that § 16-11-2(b), as a whole, is unconstitutional. In reaching that conclusion, the trial court held that ¶ (2) of § 16-11-2(b) was unconstitutional, and it wrote: "Since there does not appear to be a severability clause in this section of the Code or the relevant acts ... the Court will not infer that the valid remaining portions of this statute are to remain in effect." The trial court held that ¶ (2) is unconstitutional because it contains population classifications that bear no rational relationship to the purpose of the act and also because it contains an impermissible double-classification scheme. The trial court made no ruling on the question whether § 16-11-2(b) was unconstitutional on the basis that its amendments did not comply with Ala. Const.1901, §§ 105 and 106.
The State appealed. Additionally, briefs were filed by a number of amici curiae, including the Alabama Association of School Boards, the Alabama Association of School Administrators, and the State of Alabama Ethics Commission. This appeal presents issues regarding the scope of the trial court's holding as to the constitutionality of § 16-11-2(b) and the applicability of the Ethics Act.[1]
Significantly, the State, as well as the amici, concede that ¶ (2) of § 16-11-2(b) is unconstitutional, and they do not challenge the trial court's conclusion that the Legislature had no "rational basis [on which] to prohibit in Tallassee what [it] allowed in Attalla" and in cities with populations of 50,000 to 60,000. They argue only that the trial court erred in invalidating all of § 16-11-2(b). In other words, they contend that ¶ (2) is severable, or separable, from ¶ (1), which, they contend, is constitutional.
We note that we are not bound by the stipulation that ¶ (2) is unconstitutional. Cf. Tyus v. State, 347 So.2d 1377, 1382 (Ala.Crim.App.1977) ("It is not competent for parties `to determine by stipulation, questions as to the existence or proper construction or application of a statute.' 73 Am.Jur.2d 540, Statutes § 5, n. 36."). However, we have independently reviewed the statute, and we agree that ¶ (2) is unconstitutional. Accordingly, we turn to the severability issue.

I. Severability
Resolution of the severability issue requires us to determine the effect of the unconstitutionality of ¶ (2) on ¶ (1), the remaining portion of § 16-11-2(b). In other words, we must determine to what extent ¶ (1) of § 16-11-2(b) has been tainted by ¶ (2).
The parties maintain that there is no severability provision specifically applicable to § 16-11-2(b). This is true. Our inquiry does not, however, begin and end there. That is so, because "[c]ourts will strive to uphold acts of the legislature." City of Birmingham v. Smith, 507 So.2d 1312, 1315 (Ala.1987) (emphasis added). Thus, "[i]f a portion of a legislative enactment is determined to be unconstitutional but the remainder is found to be enforceable without it, a court may strike the offending portion and leave the remainder intact and in force." Id. To be sure, "[t]he inclusion of a severability clause is a clear statement of legislative intent to that effect, but the absence of such a clause does not necessarily indicate the lack of such an intent or require a holding of inseverability." Id. (emphasis added). Nevertheless, "the authority of a court to eliminate invalid elements of an act and yet sustain the valid elements is not derived from the legislature, but rather flows from powers inherent in the judiciary." 2 Norman J. Singer, Sutherland Statutory Construction, § 44.08 (5th ed.1992).
*1159 Moreover, in Title One, Chapter One, of the 1975 Code of Alabama, entitled "Construction of Code and Statutes," the Legislature has stated:
"If any provision of this Code or any amendment hereto, or any other statute, or the application thereof to any person, thing or circumstances, is held invalid by a court of competent jurisdiction, such invalidity shall not affect the provisions or application of this Code or such amendment or statute that can be given effect without the invalid provisions or application, and to this end, the provisions of this Code and such amendments and statutes are declared to be severable."
Ala.Code 1975, § 1-1-16. We regard § 1-1-16 as an expression of legislative intent regarding the general power and duty of the judiciary to sever and save statutory provisions not tainted by the unconstitutionality of other provisions in the same statute. Cf. City of Birmingham v. Smith, 507 So.2d 1312, 1316 (Ala.1987) (when the "legislature readopted provisions of Act [No. 677, 1907 Ala. Acts 604,] as Article 3 of Title 11, Chapter 42, of the 1975 Code," it "made them subject to" the severability provision of § 1-1-16). In other words, § 1-1-16 expressly "codifies" the judiciary's inherent authority in this regard.
Under these well-established principles, the judiciary's severability power extends only to those cases in which the invalid portions are "`not so intertwined with the remaining portions that such remaining portions are rendered meaningless by the extirpation.'" Hamilton v. Autauga County, 289 Ala. 419, 426, 268 So.2d 30, 36 (1972) (quoting Allen v. Walker County, 281 Ala. 156, 162, 199 So.2d 854, 860 (1967)). If they are so intertwined, it must "`be assumed that the legislature would not have passed the enactment thus rendered meaningless.'" Id. In such a case, the entire act must fall. 2 Singer, supra, § 44.04, at 502. Nevertheless, "if the remaining portions of an Act are complete within themselves, sensible and capable of execution, the Act will stand." Mitchell v. Mobile County, 294 Ala. 130, 134, 313 So.2d 172, 174 (1975).
The State contends that in prohibiting a classroom teacher from serving on her own school board, the Legislature acted rationally to establish a reasonable qualification for board membership. In other words, it argues (1) that ¶ (1) ought to be considered separately from ¶ (2); (2) that, standing by itself, ¶ (1) is rational and constitutional; and (3) that ¶ (1) is not tainted by the constitutional infirmity of ¶ (2). We agree.
If ¶ (2) is removed, then § 16-11-2(b) would read:
"The members of the city board of education, who shall, except as hereinafter provided, serve without compensation, shall be chosen solely because of their character and fitness, but no person shall be appointed or elected to this board pursuant to this section who is subject to the authority of the board."
Thus, as the State maintains, ¶ (1), by its plain language, is complete within itself, sensible and capable of execution. It plainly prohibits the appointment or election of any person who is subject to the authority of the board. Furthermore, nothing in ¶ (1) is so intertwined with ¶ (2) that ¶ (1) would be rendered meaningless by the removal of ¶ (2). In fact, ¶ (2) provides only an exception to a general rule established in ¶ (1). That exception being unconstitutional, we are bound to enforce the general rule contained in ¶ (1), which, standing alone, is complete and capable of execution. Compare Opinion of the Justices, 284 Ala. 626, 227 So.2d 396 (1969) (portions of a bill with a severability clause that would allow elections on whether to allow sale of alcoholic beverages in municipalities considered to be severable from portions of the bill containing unconstitutional population classifications), which was followed in Hamilton v. Autauga County, 289 Ala. 419, 268 So.2d 30 (1972). *1160 Therefore, we conclude that the trial court erred in holding that ¶ (1) could not be severed from ¶ (2) of § 16-11-2(b).
Having determined that ¶ (1) is severable, we must ascertain its effect on the State's petition. Section 16-11-2(b), without the invalid part, reads, in pertinent part: "no person shall be appointed or elected to this board pursuant to this section who is subject to the authority of the board." (Emphasis added.) Both parties have stipulated that Martin, as a teacher for the Tallassee City School System, is subject to the authority of the BOE. Therefore, Martin's election to the board violated the prohibition contained in § 16-11-2(b); the State's petition for a writ of quo warranto was due to be granted. Because we so hold, we need not address the State's argument that the Ethics Act requires Martin's removal from the board. The trial court's judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, LYONS, BROWN, and JOHNSTONE, JJ., concur.
COOK, J., dissents.
JOHNSTONE, Justice (concurring).
I concur with the per curiam opinion. The essence of the pertinent legislative history seems to be that ¶ (1) was adopted without constitutional defects in 1927, Alabama School Code 1927, Art. IX, § 191; and that ¶ (2) was adopted and amended with constitutional defects decades later, in 1964, 1964 Ala. Acts No. 250 (1st Special Sess.), and 1996, 1996 Ala. Acts No. 96-643, § 1, respectively. The independent and constitutional genesis and life of ¶ (1) vest it with its own independent legislative integrity and thus with severability from the later unconstitutional efforts to modify it in 1964 and 1996.
"It appears to be uniformly held that where there is a valid act and an attempted but unconstitutional amendment to it, the original act is not affected, but remains in full force and effect."
San Ann Tobacco Co. v. Hamm, 283 Ala. 397, 406, 217 So.2d 803, 810 (1968).
COOK, Justice (dissenting).
I disagree with the majority's holding that ¶ (1) is not intertwined with ¶ (2) and ought to be considered separately and that ¶ (1), by itself, is rational, constitutional, and not tainted by the constitutional infirmity of ¶ (2). Therefore, I dissent.
The trial court found that only "two Alabama cities, [namely,] Decatur and Dothan," currently fall within the population classification set forth in ¶ (2). Indeed, according to facts that were stipulated in this case, Attalla and Tallassee are roughly equal in population, having 6,859 and 5,112 citizens, respectively.[2] Thus, ¶ (2) purports to permit in three Alabama cities that which is prohibited in all others. Conversely, ¶ (1) purports to prohibit in all Alabama cities what is permitted in three cities. Neither the Legislature nor the parties have suggested any rationale for these classifications, and I have not been able to discern any.
Therefore, ¶ (1) is rendered as irrational by reference to ¶ (2) as ¶ (2) is by reference to ¶ (1). It has the same effect as though the Legislature had said: "One classroom teacher who is subject to the authority of the board of education may serve on such board in Attalla, Decatur, and Dothan, but no classroom teacher who is subject to the board of education shall serve on such board in any other city in Alabama." If § 16-11-2(b) had been so drafted, its unconstitutionality would appear more clearly than it does in the way it is, in fact, drafted. Because the irrationality of ¶ (2) clearly appears only when that provision is considered in the context of ¶ (1), ¶ (1) is tainted by the exceptions in ¶ (2).
To in effect state that ¶ (1) is rational and thus constitutional when ¶ (2) is excluded *1161 reflects a failure to consider the entire statutory objective. I recognize that ¶ (1) stood alone for many years before the amendments of 1964 and 1996. The amendments, however, changed the statutory purpose and caused ¶ (1) to become intertwined with ¶ (2). Therefore, the sections must now be considered together in assessing their constitutionality.
Moreover, "`the last expression of the legislative will is the law, in cases of conflicting provisions in the same statute, or in different statutes, the last enacted in point of time prevails.'" Williams v. State ex rel. Schwarz, 197 Ala. 40, 54, 72 So. 330, 336 (1916) (Thomas, J., dissenting). Because ¶ (2) was added to the statute by the amendments of 1964 and 1996, I cannot be certain what the Legislature's intent is with regard to teachers serving on school boards. It is not this Court's function to speculate as to what the Legislature might have intended. We have no authority arbitrarily to choose for the Legislature between these two irreconcilable approaches. In other words, it is for the Legislature to decide in an evenhanded fashion whether classroom teachers may, or may not, serve on their boards of education. Therefore, I believe ¶ (1), which purports to prohibit Martin from holding office, is tainted by ¶ (2) and, thus, that it, along with ¶ (2), should be held unconstitutional.
NOTES
[1] In addition, we note that the State and the amici contend that the trial court declared all of § 16-11-2 unconstitutional; however, it is clear from the trial court's order that it limited its holding of unconstitutionality to § 16-11-2(b). Therefore, we address only that holding.
[2] These figures were based on the 1990 census.