PER CURIAM.
Glenn Bynum and Larry Gipson appeal from the trial court’s order holding that certain amendments to § 28-2A-1 et seq., Ala.Code 1975, which statutes involve the sale of alcoholic beverages in a municipality, were not unconstitutional. We reverse and remand.

*65
Facts and Procedural History

In 1984, the legislature passed Act No. 1984-408, Ala. Acts 1984, codified at § 28-2A-1 et seq., Ala.Code 1975, which provided a procedure for municipalities having a population of 7,000 or more to hold an election to change the classification of the municipality from “dry” to “wet” or “wet” to “dry” regarding the sale of alcohol within the municipality. In 2009, the legislature passed Act No. 2009-546, Ala. Acts 2009, which amended § 28-2A-1, Ala.Code 1975, to include smaller municipalities; i.e., municipalities having a population of 1,000 or more, except in three counties and which provides, in pertinent part, as follows:
“(a) Any municipality having- a population of 1,000 or more, excluding Clay, Randolph, and Blount Counties, may change its classification from dry to wet or wet to dry by a municipal option election
(Emphasis added.)
Section 28-2A-3, Ala.Code 1975, was also-amended by Act No. 2009-546. -It now provides:
“It is hereby declared the intention and the purpose of this article to permit an election by the citizens of certain municipalities to determine the wet or dry status • of such municipalities with regard to the sale, distribution, .and consumption of alcoholic beverages within the corporate limits of such municipalities; and further, that such election shall be provided only in those municipalities which can provide safeguards for the protection of the public welfare, health, peace, and morals of the people. In the furtherance of the protection of the public welfare, health, peace, and morals, the Legislature has determined that, a population classification should be established to provide this method of municipal option election only in those municipalities with a population of 1,000 or more people within a county, excluding Clay, Randolph, and Blount Counties, it being the judgment of the Legislature that municipalities with a- lesser population would be unable to support and maintain such protection where such municipality is located in a dry county, whereas a municipality of 1,000 or more population would have the resources and ability to support and maintain such safeguards.”
(Emphasis added.)
The 2009 amendments also repealed § 28-2A-4, Ala.Code 1975, which had provided that municipalities with a population of at least 4,000 residents could hold an election to allow alcohol sáles if any municipality in the same county with a -population of 7,000 or more had voted to allow such sales pursuant to former § 28-2A-3.
In the fall of 2012, Blount County held a referendum pursuant to - § 28-2-1, Ala. Code 1975, to determine whether it would remain dry or would allow alcohol sales in the county. Section 28-2-1 provides for the sale and distribution of alcoholic beverages within counties, and it applies to all 67 counties in Alabama. The referendum failed by 160 votes. The citizens of the City of Oneonta, which is located in Blount County and which. has a population of 6,600 as of the last .decennial census, voted overwhelmingly for the legal sale and distribution of alcohol in Blount County. Subsequently, the City of Oneonta (hereinafter “the City”), pursuant.to § 28-2A-1, as amended, sought to have a municipal election to determine if the City could allow the sale of alcoholic beverages within its municipal limits. On March 7, 2013, Brandon Neal, a. resident of the City, filed a complaint challenging the City’s right to hold an election under § 28-2A-1 and seeking injunctive relief to prevent the City from spending funds on a “wet” or *66 “dry” election. The City filed an answer and a counterclaim seeking a judgment declaring § 28-2A-1 unconstitutional because, the City argued, the exclusion of Clay, Randolph, and Blount Counties from its provisions was a violation of the Equal Protection Clause.[1]
On August 20, 2013, Bynum and Gipson, as pastors of churches located in the City, filed a motion to intervene in Neal’s action, which the trial court granted. Following a stipulation of certain facts, the trial court entered an order granting the City’s declaratory relief and concluding, among other things, that the exclusion of the three counties violated the Equal Protection Clause.[2] However, the trial court entered an order striking the phrase “excluding Clay, Randolph, and Blount Counties” from § 28-2A-1 and § 28-2A-3, as amended in 2009, and upheld the remainder of Article 1 of Chapter 2A. The trial court denied the plaintiffs’ request for injunctive relief. Bynum and Gipson appealed.[3]

Standard of Review

“ ‘This court reviews de novo a trial court’s interpretation of a statute, because only a question of law is presented.’ Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala.2003). Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review.”
Continental Nat’l Indem. Co. v. Fields, 926 So.2d 1033, 1034-35 (Ala.2005).
Additionally,
“ ‘[o]ur review of constitutional challenges to legislative enactments is de novo.’ Richards v. Izzi, 819 So.2d 25, 29 n. 3 (Ala.2001). Additionally, acts of the legislature are presumed constitutional. State v. Alabama Mun. Ins. Corp., 730 So.2d 107, 110 (Ala.1998). See also Dobbs v. Shelby County Econ. & Indus. Dev. Auth., 749 So.2d 425, 428 (Ala.1999) (‘In reviewing the constitutionality of a legislative act, this Court will sustain the act “ ‘unless it is clear beyond reasonable doubt that it is violative of the fundamental law.’” White v. Reynolds Metals Co., 558 So.2d 373, 383 (Ala.1989) (quoting Alabama State Fed’n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)).’). We approach the question of the constitutionality of a legislative act ‘ “ hvith every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.’ ” ’ Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000) (quoting Moore v. Mobile Infirmary Ass’n, 592 So.2d 156, 159 (Ala.1991), quoting in turn McAdory, 246 Ala. at 9, 18 So.2d at 815).
“Moreover, in order to overcome the presumption of constitutionality, ... the party asserting the unconstitutionality of the Act ... bears the burden ‘to show that [the Act] is not constitutional’ Board of Trustees of Employees’ Retirement Sys. of Montgomery v. Talley, 291 Ala. 307, 310, 280 So.2d 553, 556 (1973). *67 See also Thorn v. Jefferson County, 375 So.2d 780, 787 (Ala.1979)(‘It is the law, of course, that a party attacking a statute has the burden of overcoming the presumption of constitutionality....’)”
State ex rel. King v. Morton, 955 So.2d 1012, 1017 (Ala.2006).

Discussion

Bynum and Gipson argue that the 2009 amendments to §§ 28-2A-l and -3 are unconstitutional in that they intentionally excluded municipalities in three counties from the provisions of the amended statutes. They further argue that the trial court erred in severing the “excluding Clay, Randolph, and Blount Counties” language from §§ 28-2A-1 and -3 and that the trial court should have found § 28-2A-1 and § 28-2A-3, as amended, unconstitutional in their entirety instead of merely severing the offending portions. They argue that the legislature knowingly and intentionally violated the Equal Protection Clause when it excluded the three counties from the provisions of the statutes and that severability cannot be used to make §§ 28-2A-1 and -3, as amended, constitutional.
■ The City agrees that the legislature’s exclusion of the three counties was unconstitutional.[4] However, the City argues that when the unconstitutional language is stricken, the remainder of § 28-2A-1 and § 28-2A-3, as amended in 2009, is enforceable. The City contends that severing the offending language would not undermine the manifest purpose of the 2009 amendments to §§ 28-2A-1 and -3 to allow smaller municipalities the option to allow the sale of alcoholic beverages within their municipal.limits.
We agree that the exclusion of the three, counties from the provisions of § 28-2A-1 and § 28-2A-3 violates the Equal Protection Clause. Cf. State ex rel. Jeffers v. Martin, 735 So.2d 1156 (Ala.1999) (noting that, although the parties stipulated that part of a statute was unconstitutional, it was not for the parties to determine the proper construction or interpretation of the statute). The State has a legitimate interest in regulating the sale and distribution of alcoholic beverages, within its borders. Krupp Oil Co. v. Yeargan, 665 So.2d 920 (Ala.1995); Historic Warehouse, Inc. v. Alabama Alcoholic Beverage Control Bd., 423 So.2d 211 (Ala.1982). A statute that is rationally related to a legitimate state interest does not violate the Equal Protection Clause. Here, the exclusion of the 3 counties from the provisions of §§ 28-2A-1 and -3 is not rationally related to the regulation of alcohol because no basis exists for the distinction between the 3 counties excluded and the 64 counties included by the 2009 amendments to those statutes allowing municipalities with 1,000 or more citizens to conduct an election to permit the sale of alcoholic ■ beverages within their municipal limits.
The pertinent issue before us is whether the trial court erred in severing the offending language from §§ 28-2A-1 and -3, as amended in 2009, and upholding the remainder of Article 1 of Chapter 2A. The parties recognize that Act No. *68 2009-546 does not contain a severability clause. The lack of a severability clause does not end our inquiry, however, because “courts will strive to uphold acts of the legislature.” City of Birmingham v. Smith 507 So.2d 1312, 1315 (Ala.1987). “If a portion of a legislative enactment is' determined to be unconstitutional but the remainder is found to be enforceable without it, a court may strike the offending portion and leave the remainder intact and in force.” Id. “The inclusion of a severability clause is a clear statement of legislative intent to that effect, but the absence of , such a clause does not neces-sarily indicate the lack of such an intent or require a holding of inseverability.” Id. “ ‘[T]he authority of a court to eliminate invalid elements of an act and yet sustain the valid elements is not derived from the legislature, but rather flows from powers inherent in the judiciary.’ ” Martin, 735 So.2d at 1158 (quoting Norman J. Singer, Sutherland Statutory Construction § 44.08 (5th ed.1992)).
Section 1-1-16, Ala.Code 1975, provides:
“If any provision of this Code or any amendment hereto, or any other statute, or the application thereof to any person, thing or circumstances, is held invalid by a court of competent jurisdiction, such invalidity shall not affect the provisions or application of this Code or such amendment or statute that can be given effect without the invalid provisions or application, and tó this end, the provisions of this Code and such amendments and statutes are declared to be severa-ble.” • ■
This Court regards § 1-1-16 as an expression of legislative intent regarding the general power and duty of the judiciary to sever and save statutory provisions not tainted by. the unconstitutionally of provisions in the statute. In Smith, 507 So.2d at 1316, we stated that, when-the “legislature readopted provisions of Act [No. 677, Ala. Acts 1907;] as Article 3 of title 11, chapter 42, of the 1975 Code,” it “made them subject to” the severability provision of § l-i-16. In short, § 1-1-16 expressly “codifies” the judiciary’s inherent authority to sever and save statutory provisions not tainted by the unconstitutionality of portions of the statutes.
“The guiding star in severability cases .is legislative intent.” Beck v. State, 396 So.2d 645, 658 (Ala.1980). Where a statute is partly invalid, the court must be persuaded that the legislature intended that, if the invalid portion is stricken, the valid portion should survive. Newton v. City of Tuscaloosa, 251 Ala. 209, 36 So.2d 487 (1948).
■ “One of the tests used to determine whether an act is or is not severable, so that a portion may be rejected, is that it ought not to be held wholly void unless the invalid portion is so important to the general plan and operation of the law in its entirety as reasonably to lead to the conclusion that it would not have been adopted if the legislature had perceived the invalidity of the part so held to be unconstitutional. Where the valid and invalid parts are so bound together that the invalid part is a material inducement to the valid portion, the whole is invalid. Union Bank & Trust Co. v. Blan, 229 Ala. 180, 155 So. 612 [(1934)], and cases cited; 6 Ruling Case Law page 125, section 123.”
A. Bertolla & Sons v. State, 247 Ala. 269, 271, 24 So.2d 23, 25 (1945).
Another principle of severability to guide us is set out in Martin, 735 So.2d at 1159:
“Under these well-established princi-pies, the judiciary’s severability power extends only to those cases in which the invalid portions are ‘ “not so intertwined *69 with the remaining- portions that such remaining , portions are rendered meaningless by the extirpation.” ’ Hamilton v. Autauga County, 289 Ala. 419, 426, 268 So.2d 30, 36 (1972) (quoting Allen v. Walker County, 281 Ala. 166, 162, 199 So.2d 854, 860 (1967)). If they are so intertwined, it must ‘ “be assumed that the legislature would not have passed the enactment thus rendered meaningless.” ’ Id. In such a case, the entire act must fall. 2 [Norman J.] Singer, [Sutherland Statutory Constructmi ] § 44.04, at 502 [ (5th ed.1992) ]. Nevertheless, ‘if the remaining portions of an Act are complete within themselves, sensible and capable of execution, the Act will stand.’ Mitchell v. Mobile County, 294 Ala. 130, 134, 313 So.2d 172, 174 (1975).”
In City of Mobile v. Salter, 287 Ala. 660, 666-67, 255 So.2d 5, 10 (1971), this Court quoted from Allen v. Louisiana, 103 U.S. 80, 83, 26 L.Ed. 318 (1880), as follows:
“‘It is an elementary principle-that the same statute may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected. “But,” ... “if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.” ...’”
In Opinion of the Justices No. 197, 284 Ala. 626, 227 So.2d 396 (1969), the governor requested an advisory opinion on whether a proposed bill authorizing municipalities in dry counties to hold elections on whether to allow the sale of alcoholic beverages in those municipalities was constitutional. The proposed bill excluded certain counties from the operation of the bill by population classifications that were so narrowly drawn that 23 counties were excluded. In making exceptions, for example, the legislature established a population range of 21,900 to 22,000, which applied only to Franklin County, and a population range of 22,000 to 22,350, which applied only to Geneva County.
Four of the Justices opined that, as written, the proposed bill was unconstitutional but that the unconstitutional portions could be stricken and the remainder of the proposed bill would survive:
“As indicated above, House Bill 342, as passed by the legislature, exempted certain counties from the operation of the bill, such exemptions being based on population classifications. We are not here concerned with the motives which prompted individual members of the legislature to voté as they did on the measure. The following from Wiseman v. Madison Cadillac Co., 191 Ark. 1021, 88 S.W.2d 1007, 1009, 103 A.L.R. 1208 [ (1935) ], cited with approval by this Court in James v. Todd, 267 Ala. 495, 103 So.2d 19 [ (1957) ], appeal dismissed 358 U.S. 206, 79 S.Ct. 288, 3 L.Ed.2d 235 [ (1958) ], is applicable:
“‘The intention of the Legislature, to which effect must be given, is that expressed in the statute, and the courts will not inquire into the motives which influenced the Legislature or individual members in voting for its passage, nor indeed as to the intention of the draftsman or of the Legislature so far as it has not been expressed in the act. So in ascertaining the meaning of a statute the court will not be governed or influenced by the views or opinions of any or all of the mem *70 bers of the Legislature, or its legislative committees or any other person.’ ” Id., 267 Ala. at 506, 103 So.2d at 28.’
“It is a well-established rule in this State that a severability clause should be given effect where possible in order to save a legislative enactment. Allen v. Walker County, 281 Ala. 156, 199 So.2d 854 [ (1967) ]; Wilkins v. Woolf, 281 Ala. 693, 208 So.2d 74 [ (1968) ]; San Ann Tobacco Co. v. Hamm, 283 Ala. 397, 217 So.2d 803 [ (1968) ]. Such a clause or provision in an act is to be given its full scope and effect. Shuttlesworth v. Birmingham Bd. of Ed. of Jefferson County, Alabama, 162 F.Supp. 372 [ (N.D.Ala.1958) ], affirmed 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145 [(1958)].
“When that which we have declared unconstitutional is stricken, there remains an act complete in itself, sensible and capable of being executed. The striking of the invalid sections does not overthrow the entire act. Alabama Public Service Commission v. AAA Motor Lines, Inc., 272 Ala. 362, 131 So.2d 172 [ (1961) ], cert. denied 368 U.S. 896, 82 S.Ct. 173, 7 L.Ed.2d 93 [(1961)].
“The severability clause in House Bill 342, declaring that the unconstitutionality or invalidity of any part of the Act shall not affect the part of the Act which remains, serves to assure this Court that the legislature intended that the Act should be divisible, and that the invalidity of any part thereof should not affect the validity of remaining portions of such Act. Opinion of Justices [No. 69 ], 247 Ala. 195, 23 So.2d 505 [(1945)]. Therefore, our answer is that the unconstitutionality of the bill as presently written is overcome by the striking of the amendments thereto.”
284 Ala. at 628-29, 227 So.2d at 398-99.
Two of the Justices issued a separate opinion, agreeing that the proposed bill was unconstitutional but opining that it was the clear intent of the legislature to exempt 23 counties from the operation of the proposed bill. The two Justices stated:
“It is both possible and probable that some representatives and senators voted for the bill on final passage because they thought they were secure in the knowledge that the county or counties they represented had been specifically excluded from the operation of the bill. The bill specifically exempts 23 counties, and the Legislature took the pains to enumerate them by population classifications, but under the majority opinion, a usual separability clause, which is general and not specific, is given more weight in ascertaining the intent of the Legislature than the detailed and specific provisions of Section 4 of the bill.
“Thus, a general and customary sentence found in most legislative enactments is permitted to make constitutional a bill which all the justices participating in this opinion agree is a local bill and unconstitutional except for the separability clause. This would make the law effective in 23 counties whose legislative delegations thought had been removed from the bill’s operation, and specifically contrary to the plain and announced intention of the Legislature that the bill did not affect these 23 counties. It is doubtful if ever before a separability section in a bill put a law into effect in over one-third of the counties in the state when the Legislature had plainly, specifically and intentionally excluded those counties from the operation of the bill.
“To give effect to the separability clause by striking Section 4 would make *71 the proposed law effective in many counties in which the Legislature specifically had exempted and thus a separability clause would be given more effect than the expressed intention of the Legislature in dealing with numerous counties of the state.
“We have not been cited to, or have we found, any case in Alabama which holds that a separability clause in a bill can change it from a local bill to a general bill. We do not think such a clause can nullify the effect of Section 111 of the Constitution.
“It would be an anomaly if a general bill could be converted into a local bill by amendments, and after passage as amended, be reconverted into a general bill by invocation of a separability clause. Such a chameleon process in itself is a complete denial of the legislative intent and legislative processes.”
284 Ala. at 629-30, 227 So.2d at 399-400.
The statute at issue in Hamilton v. Autauga County, 289 Ala. 419, 268 So.2d 30 (1972), was enacted to stop the practice of paying sheriffs with commissions and fees they collected and pay them instead based on a standard salary schedule determined by county-population classifications. However, the statute created exceptions based on narrowly drawn population classifications that allowed sheriffs in certain counties to continue with the commission and fee system. The object of the statute — the process of a sheriffs being paid by commissions and fees collected by the sheriff— was the system for payment of sheriffs in every county of the State. The statute did not affect every county because of the narrowly drawn classifications exempting 24 counties. The act proposing the statute contained a severability clause. The Hamilton Court found the four Justices’ opinion in Opinion of the Justices No. 197, supra, to be persuasive, and it severed the unconstitutional provisions from the statute. The Court also noted that the sheriffs pay statute was enacted shortly after the Court released its advisory opinion in Opinion of the Justices No. 197. The Court in Hamilton stated:
“It would appear that the legislature had a right to rely on the pronouncement of a majority of the justices in Opinion of the Justices [No. 197], upholding a severability clause identical to the one in [the sheriffs pay statute] and under an almost identical fact situation.
“Since the conjecture is indulged that the legislature would not have enacted [the sheriffs pay statute] without these exceptions, may not the converse also be indulged — that the legislature would not have accepted the amendments had it not relied on Opinion of the Justices [No. 197], supra, that the severability clause would save the act if the amendments were held unconstitutional?”
289 Ala. at 431, 268 So.2d at 41.
In King v. Campbell, 988 So.2d 969 (Ala.2007), a voter challenged the constitutionality of an act that amended a statute, creating an additional circuit court judgeship and providing for the initial filling of the newly created judgeship to be by appointment of the governor rather than by election. The original act contained a sev-erability clause. This Court held that the portion of the act that created an additional circuit court judgeship, requiring that the office be initially filled by a gubernatorial appointment, violated constitutional provisions requiring the election of all judges and that it was not valid under any other constitutional provisions providing for the governor to fill vacancies in any judicial office by appointment. “[I]n no instance has this Court ever upheld the authority of the governor to fill a ‘vacancy’ pursuant to a statute providing for ap *72 pointment of the initial officeholder.” 988 So.2d at 981.
The trial court in King concluded that the offending portion of the act could not be severed in that the appointment of the judge by the governor was a “consideration and an inducement to the subsequent election” for the judgeship. 988 So.2d at 984. In addressing the severability issue, this Court stated:
“We must determine whether we agree with the trial court’s ultimate conclusion that ‘the appointment was a consideration and inducement to a subsequent election.’ Our review of an issue concerning the intent of the legislature is confined to the terms of the legislative act itself, unaided by the views of observers of or participants in the legislative process. City of Daphne v. City of Spanish Fort, 853 So.2d 933, 945 (Ala.2003). We can look to ‘ “the history of the times, the existing order of .things, the state of the law when the instrument was adopted, and the conditio'ns necessitating such adoption.’” City of Birmingham v. Hendrix, 257-Ala. 300, 307, 58 So.2d 626, 633 (1952) (quoting In re Upshaw, 247 Ala. 221, 223, 23 So.2d 861, 863 (1945)). We can also look to an act’s ‘ “relation to other statutory and constitutional provisions, view its history and the purposes sought to be accomplished and look to the previous state of law and to the ■ defects intended to be remedied.”’ Hendrix, 257 Ala. at 307, 58 So.2d at 633 (quoting Birmingham Paper Co. v. Curry, 238 Ala. 138, 140, 190 So. 86, 88 (1939)).
[[Image here]]
“When we reject severability and strike down in its entirety an act that contains an invalid provision, we must be comfortable with the conclusion that a majority of the legislators voting in favor of the bill that became the act would prefer no statute at all to the alternative of eliminating only the provision that violates the constitution. In this context, the question posed would be:
“‘If the provision in the 2006 Act allowing the governor to appoint at some time after October 1, 2009, is struck down, are you content to allow that circumstance to nullify the separate provision of the 2006 Act repealing the election this year (2006) and replacing it with an' election in 2010?’
“Section 1 of the 2006 Act, in the first sentence, creates an additional judgeship. There follow two 'separate sentences. The first of these two sentences calls for filling the office by appointment ‘on or after October 1, 2009.’ The second of these two sentences subjects the judgeship to election at the general election in 2010. The record of three previous postponements (1987, 1993, and 1999) of the time for filling the additional judgeship for the 29th Judicial Circuit is convincing evidence that the deferral of the commencement of the term from 2006 to a later date was not a secondary consideration wholly subordinate to the provision for commencement of the term by gubernatorial appointment. The answer to the hypothetical question whether the legislature would have' been satisfied by the result of striking down the entire 2006 Act would therefore have to be an emphatic no. A legislator so polled would be cognizant of the fact that saving that part that is constitutional would permit subsequent enactment of a statute that passed constitutional muster while continuing to provide for a term beginning at a date other than in 2006, as was clearly intended-by . the 2006 Act, consistent with the will of three preceding legislatures. On the other hand, if we conclude that the will *73 of the legislature would have been to see the entire 2006 Act fail by reason of constitutional infirmity as to only a portion of it and thus to allow an election to take place in 2006, we will have ignored the clearly expressed will of the legislature in that portion of the 2006 Act unaffected by constitutional infirmity. Such aggressive exercise of the power of judicial review is inconsistent with our obligations under the constitutional mandate for separation of powers.
“As this Court stated in Springer [v. State ex rel. Williams, 229 Ala. 339, 157 So. 219 (1934) ]: ‘If the act thus deleted of the invalid part is competent to stand without the invalid part, and leaves an enactment complete within itself, sensible, and capable of being executed, it will stand, unless the two parts — the valid and invalid — are so inseparable as to raise the presumption that the Legislature would not have enacted the one without the other.’ 229 Ala. at 343, 157 So. at 223. Applying that standard to this case, the portion of Section 1 of the 2006 Act amending the provision in the 1985 Act, as last amended, which called for an election in 2006, and providing instead for an election in 2010 for a term of office to begin in 2011, clearly constitutes an enactment ‘complete within itself, sensible, and capable of being executed.’
“In summary, we conclude, that it is more logical to presume that the legislature did not contemplate election of a third circuit judge in the 2006 election than it is to assume that, if the legislature knew that the office could not be filled by gubernatorial appointment on or after October 1, 2009, it would prefer the status quo before the 2006 Act of an election in 2006. This is especially so in light of the legislature’s previous disposition to postpone repeatedly the effective date and of the availability to the legislature of the means to adjust further the effective date by subsequent legislation if we decline to sever and save.
“We therefore cannot conclude that the primary intent of the legislature was to change the method of filling the judgeship from that of an election to appointment. The unconstitutional provision of the 2006 Act is not ‘ “so important to the general plan and operation of the law in its entirety as reasonably to' lead to the conclusion that it would not have been adopted if the legislature’ had perceived the invalidity of the part so held to be unconstitutional.” ’ Newton v. City of Tuscaloosa, 251 Ala. [209] at 217, 36 So.2d [487] at 493 [(1948)] (quoting A. Bertolla & Sons v. State, 247 Ala. 269, 271, 24 So.2d 23, 25 (1945)). Nor can we find that the appointment clause and the deferral of the election to 2010 are ‘so intertwined’ that it must be assumed that the legislature would not have passed an act that, shorn of the offending provision, has become ‘meaningless,’ where, as here, the remaining portions of the 2006 Act are ‘complete within [themselves], sensible, and capable of execution.’ State ex rel Jeffers v. Martin, 735 So.2d [1156] at 1159 [(Ala.1999)]. That aspect of the 2006 Act deferring the onset of the term until January 2011 remains in effect, thereby amending the provision for an election in 2006 in the 1999 Act.”
988 So,2d at 984-86 (emphasis omitted; emphasis added).
In the present case, it -is clear that the legislature intended to omit the 3 counties from inclusion in Act No. 2009-546 allowing municipalities with a population of more than 1,000 to hold elections regarding the sale of alcohol in. their municipal limits. It is also clear that the legislature did not include a severability clause in Act *74 No. 2009-546. As noted above, the legislature has included a general severability-provision in the Alabama Code, which this Court regards as an expression of legislative intent concerning the general power and duty of the judiciary to sever and save statutory provisions not tainted by the unconstitutionality of other provisions in the statute. .However, the inclusion of a sever-ability clause in a particular act is a clear statement of a legislative intent to sever unconstitutional provisions in that act while allowing the constitutional provisions to remain. The acts at issue in Opinion of the Justices No. 197, Hamilton, and King contained severability clauses as an expression of legislative intent to sever, in contrast to Act No. 2009-546.
Although this Court has • inherent authority to sever and save statutory provisions not tainted by the unconstitutional portions of the statute as acknowledged in § 1-1-16, that authority extends only to those cases in which the invalid portions are not so intertwined with the remaining portions that the remaining portions are rendered meaningless by the extirpation of the offending portion,. That is, are the valid and invalid provisions so inseparable that legal effect cannot be given to the remaining valid portion, standing alone, and can it be presumed that the legislature would not have enacted the valid portion without the invalid portion? Here, the constitutional issue is' one of equal protection, the gravamen of which is the notion that there are two different clauses in the same enactment that treat 3 counties differently from 64 counties without a sufficient reason. For this Court to sever the provisions exempting the three counties from the statutes would be to presume that the legislature meant Act No. 2009-546 to be applied to the three counties the legislature specifically excluded. It is not this Court’s function to speculate as to what the legislature might have intended by such an exclusion when the exclusion has no rationale. We recognize that municipalities with more than 1,000 residents in 64 counties have held elections on whether to sell alcohol. However, we must leave it to the legislature to redraft a constitutionally sound law.
,“[S]evering invalid portions of a statute — simply because the legislature prefers that course of action — creates the wrong set of incentives for legislatures. It overprotects the legislature’s freedom to innovate at the cost of reducing its incentives to attend to constitutional norms ex ante (i.e., in drafting the legislation). If courts are willing to save a statute by severing on the legislature’s say-so, even when that entails substantial rewriting, the legislature has much less of a reason or incentive to respect constitutional norms at the outset. Courts, not legislators, are tailoring statutes to conform to constitutional norms. Over time, the legislature may come to depend on the courts to fix statutes rather than doing the hard work necessary to enact a properly tailored statute in the first instance. Politically, legislators may prefer this arrangement, for it frees them to pass the statute they want, knowing that courts will save as much of their handiwork as they can. But this arrangement breeds an unhealthy dependency on courts and results in a loss of accountability. When courts substantially rewrite statutes to save them, the resulting work is as much that of the judiciary as of the legislature. That makes it hard to hold the legislature accountable for the statute that the judiciary puts in place.”
David H. Gans, Severability as Judicial Lawmaking, 76 Geo. Wash. L.Rev. 639, 644 (April 2008) (footnote omitted).
In conclusion, the exclusion of the 3 counties from the provisions of Act No. *75 2009-546 violated the Equal Protection Clause where the exclusion was not rationally related to the regulation of. alcohol because no basis existed for excluding smaller cities within those 3 counties from participating in a “wet” or “dry” election and allowing smaller cities in the remaining 64 counties to do so. However, using severability to save Act No. 2009-546 was not permissible where it was obvious that the legislature excluded the three counties for no rational reason, and to edit Act No. 2009-546 by severing that language excluding the three counties would be to undermine the clear intent of the legislature. Accordingly, the judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
STUART, BOLIN, PARKER, MURDOCK, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., and SHAW, J„ concur in the result.

. Pursuant to § 6-6-227, Ala.Code 1975, the attorney general was notified of the constitutional challenge to the statutes; he filed an "acceptance and waiver” of his right to be heard.

. The trial court also addressed whether the 2009 amendments violated the prohibition that a local law may not be passed without advertisement and the prohibition against a law’s having two subjects. On appeal, By-num and Gipson opted not to address these grounds based on their belief that the passage by the legislature of the annual codification bill remedied these defects. We need not address the correctness of that belief.

.Neal is not a party to this appeal.

. The City had argued that the 2009 amendments to §§ 28-2A-1 and -3 violated the Equal Protection Clause because the fundamental right of voting was involved and that strict-scrutiny analysis was applicable. However, not every law that affects the right to vote is subject to strict-scrutiny analysis. Blevins v. Chapman, 47 So.3d 227 (Ala.2010). The legislative power to regulate the sale of liquor is nearly absolute. The legislature may regulate it as it sees fit or prohibit it entirely. Ebony Club, Inc. v. Simpson, 294 Ala. 421, 318 So.2d 282 (1975). Bynum and Gipson argued that the rational-basis test should be applied to the equal-protection violation. The trial court applied both tests in its order.